**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy Joe PINTER, Defendant–Appellant.**

**No. 89–7061.**

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1993.

Kathleen A. Felton, Dept. of Justice, Crim. Div., Appellate Section (John Raley,

U.S. Atty., Paul G. Hess, Asst. U.S. Atty., with her on the brief), Washington, DC, for plaintiff-appellee.

Susan M. Otto, Asst. Federal Public Defender (Stephen J. Greubel, Asst. Federal Public Defender, on the brief), Tulsa, OK, for defendant-appellant.

Before SEYMOUR, MOORE, Circuit Judges, and THEIS, District Judge.*

THEIS, District Judge.

This is an appeal from the United States District Court for the Eastern District of Oklahoma, the Honorable Frank H. Seay presiding. The issue presented for appeal is whether the district court erred in denying defendant's motion to suppress evidence found in an open field. We find no error and therefore affirm.

In February 1989, Defendant/Appellant Billy Joe Pinter and three codefendants were charged in an eleven count indictment with violations of various drug statutes. Pinter was charged in six counts with conspiracy, manufacturing methamphetamine, possession of methamphetamine with intent to distribute, possession of methamphetamine oil with intent to manufacture methamphetamine, manufacturing phenylacetone, and maintaining and/or making available for use a place and enclosure for the purpose of manufacturing methamphetamine/amphetamine. R.Vol. I, Tab 1. Pinter was found guilty by a jury of all six counts against him was sentenced to 15 years imprisonment. R.Vol. I, Tab 30. This court recently recalled its mandate and reinstated Pinter's direct appeal. *See United States v. Pinter*, 971 F.2d 554 (10th Cir.1992).

Before trial, Pinter filed a motion to suppress. R.Vol. I, Tab. 20. Following an evidentiary hearing, the district court ruled that the seizure of all items taken at the drug lab site was proper under the open fields and plain view doctrines. The court did suppress all statements Pinter made before he was advised of his rights. R.Vol. I, Tab. 25.

Special Agent Dorsey Shannon of the Drug Enforcement Administration (DEA) testified at the suppression hearing. During the summer of 1987, Pinter and his colleagues were under investigation by the DEA based on information received from a confidential informant. R.Vol. II at 33–35. On July 13, 1987, three agents from the DEA and the Bureau of Alcohol, Tobacco and Firearms observed Pinter purchase two 55 gallon drums of chemicals at a chemical company in Oklahoma City. Those agents followed Pinter to an area southwest of Beggs, Oklahoma. The agents observed Pinter unload the drums in a field. Pinter left the area and was not followed. Agent Shannon subsequently arrived at the scene. Shannon and DEA Agent Rande Matteson set off to find Pinter and interview him. R.Vol. II at 9–11.

Agents Shannon and Matteson were driving to Pinter's house northeast of Beggs when they observed Pinter driving through Beggs and heading in the general direction of the field where the chemicals had been left. The agents decided to follow him. Pinter drove west from Beggs and turned south onto a gravel road. The agents eventually lost sight of Pinter but were able to follow the dust from Pinter's truck for a while. The agents then followed a set of tire tracks that they thought were left by Pinter's truck. The tire tracks entered an oil lease. The agents turned into the oil lease, continuing to follow the tire tracks they suspected were from Pinter's vehicle. The agents ended up on foot when the road became too rough for their vehicle. R.Vol. II at 11–13.

Eventually the agents walked to a point where they observed a water tank mounted on a trailer approximately 100 yards away. The agents saw another vehicle at the site, but did not see Pinter's pickup. The agents proceeded toward the site for the purpose of asking anyone who may have been there whether they had seen Pinter.

* The Honorable Frank G. Theis, District Judge, United States District Court for the District of Kansas, sitting by designation.

As they approached the site and at a distance of 75–80 yards away, they smelled the odor of ether (commonly associated with the manufacture of drugs) and observed an individual near the water tank. The agents walked closer, and when they thought they had been seen, announced themselves as federal agents. The individual at the site was Pinter. The agents then arrested him. R.Vol. II at 13–15.

At the site, the agents saw other vehicles, including a second trailer, Pinter's truck, and a car. The agents also observed a quantity of laboratory equipment on the ground. A search of the two trailers, pursuant to a written consent to search executed by Pinter, revealed laboratory equipment, scales and plastic bags, and a powder later determined to be a controlled substance. R.Vol. II at 15–26.

On appeal, Pinter argues that the federal agents' warrantless search and seizure conducted on a private oil lease was in violation of his fourth amendment rights and that the district court erred in failing to sustain his motion to suppress. The standard of review of a district court's denial of a motion to suppress is well established. The district court's findings of fact are reviewed under the clearly erroneous standard, with the evidence viewed in the light most favorable to the district court's findings. *United States v. Preciado*, 966 F.2d 596, 597 (10th Cir.1992) (quoting *United States v. Benitez*, 899 F.2d 995, 997 (10th Cir.1990)). The question of whether a fourth amendment violation occurred is a question of law reviewed de novo. *United States v. Corral*, 970 F.2d 719, 723 (10th Cir.1992).

Pinter challenges both the factual findings and the legal conclusion of the district court. Pinter asserts that the following factual findings are clearly erroneous:

Agent Shannon and another agent continued to follow Pinter in his vehicle down a remote, rural, dirt (oil lease) road, to a point where the agents stopped their vehicle and proceeded on foot. The agents then came to a place where, about 100 yards away, they could see a water tank and defendant Pinter's vehicle. At that point, Agent Shannon could smell odors of chemicals which in his experience associated with the operation of clandestine drug labs, principally, the smell of ether.

Appellant's brief at 11, 13, 15 (quoting District Court's Order, R.Vol. I, Tab 25 at pp. 1–2).

Pinter argues that the district court's factual findings are erroneous in several respects. Pinter's basic complaint is that the district court's factual findings do not match precisely the agent's testimony from the hearing. The alleged errors in the district court's findings are as follows: the agents did not in fact see Pinter's truck at first; they saw another vehicle from the 100 yard distance; they saw Pinter's vehicle only after arriving at the site; and the agents smelled ether at a distance of 75–80 yards, not at a distance of 100 yards. After examining the transcript of the hearing, it is evident that the district court merely summarized the testimony from the hearing, leaving out many of the minor details. The factual discrepancies are of no significance under the open fields doctrine and provide no basis for reversal of the district court's decision.

Pinter argues that the open fields doctrine should not be a license for the police to "indiscriminately frolic" through private fields in search of possible wrongdoing. Pinter argues that, at a minimum, the intruding officers should have some legitimate reason for being present prior to availing themselves of the open fields doctrine.

■ The United States Supreme Court held in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) that the "open fields" doctrine permits police officers to enter and search a field without a warrant. In *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the Supreme Court reaffirmed the open fields doctrine, holding that the government's intrusion upon an open field "is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment." *Id.* at 177, 104 S.Ct. at 1740. The Court reaffirmed that no expectation

of privacy legitimately attaches to an open field. *Id.* at 180, 104 S.Ct. at 1742. Further, an open field "need be neither 'open' nor a 'field' as those terms are used in common speech." *Id.* at 180 n. 11, 104 S.Ct. at 1742 n. 11. The fact that the officers trespass onto private property does not transform their actions into a "search" within the meaning of the fourth amendment. *Id.* at 183–84 & n. 15, 104 S.Ct. at 1743–44 & n. 15.

■■■ The open fields doctrine does not require that law enforcement officials have some objective reason—either probable cause or reasonable suspicion—before entering an open field. The fact that the agents suspected Pinter of wrongdoing makes no difference to the analysis. The fact that the property was privately owned and the agents were trespassers makes no difference. The fact that the property may not have been "open" in the sense that the area was wooded and the laboratory location was not visible from a public place likewise is of no significance.

Pinter asks this court to carve out an exception to the open fields doctrine, one which would require probable cause or reasonable suspicion before law enforcement officers could enter an open field. Prior precedent from the United States Supreme Court does not require law enforcement officers to have probable cause or reasonable suspicion prior to entering an open field. Our prior precedents do not impose such a requirement. We decline to impose such a limitation on the open fields doctrine.

Pinter's pro se motion to supplement the record is denied.

AFFIRMED.