992 F.2d 1222
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Joseph Angelo DICESARE, Plaintiff-Appellant,
v.
Richard E. STOUT; Clive C. Clark; Lee Ayers; Douglas
Cagle; Vance Walters; Dub Dickett; Dale Leard;
Gene Allen; Finnis Whiteside; Bill
Joslin; Mark McIntosh,
Defendants-Appellees.
 No. 92-7116.
 United States Court of Appeals, Tenth Circuit.
 April 23, 1993.
 
 1
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 VAN BEBBER, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Plaintiff Joseph Angelo DiCesare appeals from an order of the district court dismissing his complaint.[1] We affirm.
 
 
 6
 Plaintiff was convicted in Oklahoma of violating Okla.Stat. tit. 21, § 1685[2] after sheriff officers seized twenty-seven malnourished and starving horses owned by plaintiff. Approximately six months later, the twenty-five horses which had survived were sold, and the amounts received were used to pay for their care in accordance with the statute.
 
 
 7
 Plaintiff commenced this action pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, 1987, and 1988. Plaintiff alleged that defendants, various county district attorneys and commissioners, sheriff officers, a veterinarian, and the owner of the barn from which the horses were sold, had conspired to steal his horses. Plaintiff also alleged his Fourth Amendment rights were violated because the horses were seized without a warrant.
 
 
 8
 In dismissing plaintiff's complaint, the district court held that plaintiff's conspiracy claim should be dismissed because it was conclusory and lacked any underlying factual basis. The court also held that plaintiff had failed to show any class-based or invidiously discriminatory animus on the part of defendants which was intended to deprive him of equal protection or equal privileges under state law and, therefore, had failed to state a claim under § 1985(3).
 
 
 9
 On appeal, plaintiff argues that he did meet the requirements of § 1985(3). He also argues the court (1) erred in not addressing his § 1983 claims, (2) abused its discretion in not appointing counsel and by not ruling on his motions, (3) erred in not staying the proceedings until his direct appeal from his criminal conviction was decided, and (4) violated his First Amendment rights by assigning the case to different judges.
 
 
 10
 The district court properly dismissed plaintiff's §§ 1981 and 1982 claims. These sections prohibit discrimination on the basis of race. See Patrick v. Miller, 953 F.2d 1240, 1250 (10th Cir.1992) (§ 1981); Asbury v. Brougham, 866 F.2d 1276, 1279 n. 3 (10th Cir.1989) (§ 1982). Plaintiff's claim that he was discriminated against because of his Italian heritage and because he was a newcomer to the area fails to allege a claim of discrimination on the basis of race even as broadly construed. Cf. Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 n. 7 (10th Cir.1991); Petrone v. City of Reading, 541 F.Supp. 735, 738-39 (E.D.Pa.1982).
 
 
 11
 To allege a valid § 1985(3) action, plaintiff had to allege facts showing a conspiracy to deprive him of "the equal enjoyment of rights secured by the law to all." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Because plaintiff failed to make such a showing, the district court properly dismissed plaintiff's conspiracy claim. Sections 1986, 1987, and 1988 cannot serve as the basis for any claims brought by plaintiff.
 
 
 12
 Plaintiff's only remaining potential claim arises under § 1983. Plaintiff alleged his Fourth Amendment rights were violated because his horses were seized without a warrant. We generally do not rule on issues the district court has declined to address. However, we may decide them if sufficient pertinent facts are present in the record. See Laidley v. McClain, 914 F.2d 1386, 1394 (10th Cir.1990). The record here is sufficient to permit us to resolve this issue.
 
 
 13
 The Fourth Amendment protects people, and the effects they seek to preserve as private, from unreasonable searches and seizures. Katz v. United States, 389 U.S. 347, 351-52 (1967). In order to determine whether the Fourth Amendment has been violated, we must carefully balance both the governmental and private interests at stake with the viewpoint of whether the seizure was reasonable. Soldal v. Cook County, 113 S.Ct. 538, 543 (1992).
 
 
 14
 Plaintiff does not dispute that probable cause existed for the seizure. Therefore, we must determine whether plaintiff had a reasonable expectation of privacy in the area where the horses were located. The record does not clearly resolve this issue. The horses may have been in an open pasture. See R. Vol. 1, tab 3 at 2C, 2F (complaint) (horses were "getting out" and wandering to neighbor's property by jumping cattleguards defendant county commissioners failed to fix); id. tab 40, trans. at 20 (describing condition of pasture where horses were found).
 
 
 15
 If the horses were located in open pastureland, the Fourth Amendment does not apply. See Oliver v. United States, 466 U.S. 170, 176-77 (1984) (open fields and their effects not afforded Fourth Amendment protections). Because the government's intrusion upon an open field is not an unreasonable search proscribed by the Fourth Amendment, United States v. Pinter, 984 F.2d 376, 378, (10th Cir.1993) (citing Oliver, 466 U.S. at 177), no legitimate expectation of privacy attached, Pinter, 984 F.2d at 378-79, and the officers were permitted to search without a warrant, id. at 378 (citing Hester v. United States, 265 U.S. 57 (1924)).
 
 
 16
 Even if the horses had been corralled in the pasture, plaintiff still would have had no reasonable expectation of privacy. See United States v. Dunn, 480 U.S. 294, 303 (1987) (fences intended to corral livestock are not designed to prevent people from observing what lies inside enclosed area).
 
 
 17
 There is some indication the horses may have been near plaintiff's residence in a fenced-in area. See R. Vol. 1, tab 40, trans. at 54 (pictures show fenced-in area around residence with horses inside area); id. at 73 (horses in portable-type corral sitting "just almost directly in front of the house, off to the left ... just a short space," toward the road).
 
 
 18
 Fourth Amendment protections do extend to the area around the house itself if that area can be considered the curtilage. Dunn, 480 U.S. at 300 (curtilage includes area immediately surrounding dwelling house and affords area same protection as is afforded house itself). The curtilage is identified by inquiring whether the area is intended to protect the intimate activities which are generally associated with the sanctity of the home and the privacies of life. Id. Here, even if the horses were located near plaintiff's house within the fenced-in area, no Fourth Amendment violation occurred because this area cannot be considered curtilage under these facts.
 
 
 19
 In determining whether an area outside the home should be treated as the curtilage, the Supreme Court has identified four factors to consider. These factors include (1) the proximity of the area claimed to be curtilage to the home, (2) whether the claimed area is within an enclosure surrounding the home, (3) the uses to which the area is put, and (4) the steps taken to protect the area from observation by people passing by. Id. at 301.
 
 
 20
 Here, the horses may have been kept in an enclosed area close to plaintiff's home. However, the area was used as pastureland, and plaintiff does not claim the fence was erected for any purpose other than to corral the horses. Plaintiff does not dispute the fact that the area was not protected from observation by passersby on the public road. See R.Vol. 1, tab 19. at 3 (defendants' answer) (horses visible from adjoining road); id. at tab 21, ex. 91-3 (plaintiff's brief in support of motion to supress) (fact that object is in plain view does not justify warrantless seizure).
 
 
 21
 What a person knowingly exposes to the public, even in his own home, is not subject to Fourth Amendment protections. Katz, 389 U.S. at 351; see also State v. Durch, 479 N.E.2d 892, 894 (Ohio Ct.App.1984) (absent facts indicating to contrary, legal occupiers of residence do not have reasonable expectation of privacy as to what can be routinely viewed from normal routes of ingress to or egress from home) (citing State v. Osborn, 409 N.E.2d 1077, 1081 (Ohio Co.Ct.1980)); State v. Bauer, 379 N.W.2d 895, 898 (Wis.Ct.App.1985), review denied, 388 N.W.2d 185 (Wis.1986). Further, "the Fourth Amendment 'has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.' " Dunn, 480 U.S. at 304 (quoting California v. Ciraolo, 476 U.S. 207, 213 (1986)). We conclude the area where the horses were located was not within the curtilage of plaintiff's home. Cf. United States v. Swepston, Nos.92-7051, 92-7052, 1993 WL 66092, at * 5 (10th Cir. Mar. 12, 1993). No Fourth Amendment protections apply and, therefore, no violation occurred.
 
 
 22
 However, even if we were to hold that the horses were held within the curtilage, their seizure is justifiable under the exigent circumstances exception to the Fourth Amendment. Law enforcement officers may enter private premises without a warrant when exigent circumstances are present. Exigent circumstances arise when (1) officers have reasonable grounds to believe there is an immediate need to protect the lives or property of others, (2) search is not motivated by an intent to seize evidence, and (3) there is some reasonable basis, approaching probable cause, to believe an emergency situation exists. United States v. Anderson, 981 F.2d 1560, 1567 (10th Cir.1992); see also Bauer, 379 N.W.2d at 898 (officers may enter premises to preserve life provided they have reasonable grounds to believe an urgent need for such assistance and protective action exists).
 
 
 23
 "The exigent standard test applies to situations involving mistreatment of animals. Cruelty to animals is a statutory offense. It is therefore state policy to render aid to relatively vulnerable and helpless animals when faced with people willing or even anxious to mistreat them." Bauer, 379 N.W.2d at 899; see also Tuck v. United States, 477 A.2d 1115, 1120 (D.C.1984) (public interest in preservation of life in general and in prevention of cruelty to animals in particular requires some flexibility in application of general rule that valid warrant is prerequisite for search).
 
 
 24
 Plaintiff argues that no exigent circumstances were present. Prior to seizing the horses, the sheriff's department had received complaints about the horses. Upon investigation, they were found to be malnourished. Plaintiff, the property owner, could not be located. After several months, during which time the horses' conditions continued to deteriorate, the decision was made to seize the horses. At that time, arrangements had to be made for the transportation and housing of the animals. The record supports a conclusion that the officers acted as promptly and properly as was reasonable to provide for the horses' safety and well-being. See Bauer, 379 N.W.2d at 899. The record does not include any facts tending to show that the officers' failure to obtain a warrant reflected an absence of concern for protecting Fourth Amendment values. Further, the scope of the entry was limited to that necessary to provide assistance to the suffering animals. See Tuck, 477 A.2d at 1120-21.
 
 
 25
 No Fourth Amendment violation occurred. The district court properly dismissed plaintiff's complaint.
 
 
 26
 We have reviewed plaintiff's remaining arguments and have determined that they are without merit. Plaintiff's motion to file appendices to his briefs is DENIED insofar as plaintiff is attempting to include materials not before the district court. This court will not consider materials not presented first to the district court for its consideration. See Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1569 (10th Cir.1992).
 
 
 27
 The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The district court adopted the magistrate judge's recommendation that defendants' motions to dismiss be granted. However, the magistrate judge in making his recommendation considered the special report submitted by defendants. Therefore, the motions to dismiss should have been treated as ones for summary judgment, and notice to plaintiff of the conversion should have been provided. See Fed.R.Civ.P. 12(b). However, because plaintiff responded in kind, no reversible error occurred. See Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986)
 
 
 [2]
 Okla.Stat. tit. 21, § 1685 provides that any person who willfully or maliciously deprives any animal of necessary food, drink or shelter; or causes or permits any animal to be deprived of necessary food, drink or shelter, shall be imprisoned for not more than five years. Any officer finding a maltreated or abused animal shall have the animal taken care of. The charges for such care shall be a lien upon the animal