LOLLEY, J.
 

 liThe State of Louisiana, Department of Wildlife and Fisheries, Roy S. Schufft and Jason Clinton (collectively, the “Department”) appeal a judgment of the 39th Judicial District Court, Parish of Red River, State of Louisiana, in favor of the plaintiff, Edgar Cason. Both parties have appealed. For the following reasons, we reverse the trial court’s judgment.
 

 Facts
 

 On January 19, 2006, Roy Schufft and Jason Clinton, agents with the State of Louisiana, Department of Wildlife and Fisheries (the “agents”), were traveling on La. Highway 515, from which they went
 
 *600
 
 onto the private immovable property belonging to Edgar Cason. At the trial of the matter, Schufft claimed he saw a pickup truck backed up and parked near a boat launch extending into Loggy Bayou, a public body of water, which diverted them from La. Highway 515 onto Cason’s property. The boat launch, however, was located on Cason’s private property, which consists of 2,374 acres. The agents drove onto the private property through an open gate. The property was posted with a sign that stated: “POSTED — NO HUNTING KEEP OUT — LONG LAKE HUNTING CLUB.”
 

 The agents waited by the truck and were shortly approached by a fisherman in his boat on Loggy Bayou. No citations were issued to the fisherman. Cason testified at trial he had given permission to the fisherman to access Loggy Bayou from his property. The agents claim they then heard a gunshot, prompting them to drive toward it. Not being able to travel further on the path they were on, they turned around and returned to the main road on Cason’s property, following it until they arrived at an area where Cason has two camps, a dog pen, and out-buildings. The agents |2exited their vehicle and traveled by foot. They observed several duck hunters in a cove area on the other side of the oxbow lake that Cason’s property fronted. However, the agents did not have a boat and could not access the hunters, so they returned to their vehicle and drove back to La. Highway 515 from where they had originally came. The agents were on Ca-son’s property for approximately one hour and thirty minutes. Cason was never on the property during this time and only learned of the agents’ entry onto his property by his employees.
 

 Cason filed suit against the Department and its agents, Roy Schufft and Jason Clinton, claiming that the agency, through its employees, committed trespass and conducted an unlawful and warrantless search of his private property. After a trial of the matter, the trial court issued a thorough and lengthy opinion. It determined that the defendants committed a trespass, conducted an illegal search, and invaded the privacy of Cason when they unlawfully entered and remained upon Ca-son’s private immovable property. In doing so, the trial court denied the Department’s request for qualified immunity; however, it granted the agents’ request for qualified immunity, for the reason that they were acting pursuant to the instruction of the Department. The trial court held the Department to be solidarily liable to Cason for damages in the amount of $10,000.00. Both parties appeal the trial court’s judgment.
 

 Discussion
 

 In its first assignment of error, the Department argues that the trial court committed both a legal error and a manifest error in failing to properly apply the “open fields” doctrine. As stated, Cason originally complained |athat the agents committed a trespass on his property and made an illegal and warrantless search. The Department responded that the agents’ presence on Cason’s property for the purpose of checking the compliance with Louisiana’s wildlife and fisheries laws was constitutionally permissible pursuant to the “open fields” doctrine recognized by the United States Supreme Court in
 
 Oliver v. U.S.,
 
 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).
 
 Oliver
 
 stands for the general proposition that an intrusion upon an open field is not an unreasonable search under the Fourth Amendment of the United States Constitution. In its Opinion, the trial court considered
 
 Oliver;
 
 however, the trial court determined that the Louisiana Constitution provides a heightened protection of privacy than the U.S. Constitution,
 
 *601
 
 requiring a more conservative analysis than applied in
 
 Oliver.
 
 Here, the trial court concluded that because Cason fenced his property, gated the property, maintained posted signs on the property, conducted business operations on the property, and maintained a residence on the property, that the open fields doctrine would not apply to allow the law enforcement officers the ability to enter upon private property based on suspicionless grounds. We disagree.
 

 The Fourth Amendment to the United States Constitution provides that:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 

 | ,tThe Louisiana Constitution, Article 1, Section 5, states:
 

 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
 

 The open fields doctrine was first enunciated by the Supreme Court in
 
 Hester v. U.S.,
 
 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), and permits law enforcement officers to enter and search a field without a warrant. State actors, therefore, do not need probable cause or a warrant to enter and search an open field.
 
 U.S. v. Pinter,
 
 984 F.2d 376, 379 (10th Cir.1993),
 
 cert. denied,
 
 510 U.S. 900, 114 S.Ct. 273, 126 L.Ed.2d 224 (1993). The Fourth Amendment permits the police to search all over one’s land, so long as the officers do not cross the boundaries of one’s home.
 
 U.S. v. Seidel,
 
 794 F.Supp. 1098, 1105 (S.D.Fla.1992).
 
 Oliver, supra,
 
 was based on a fact scenario where law enforcement officials ignored “No Trespassing” signs and fences, entered private property based on a tip of illegal activity, and subsequently observed illegal drug activity. The Court held that the specific language of the Fourth Amendment does not include open fields.
 
 Oliver,
 
 466 U.S. at 177, 104 S.Ct. at 1740-41.
 

 We believe the trial court erred when it determined that the open fields doctrine would not apply in this case, concluding that the agents entered the property based on suspicionless grounds. It is our opinion that the agents indeed had reason to believe that fishing or hunting was occurring on Cason’s property, and that belief led them onto Cason’s | property legally. Moreover, we conclude that besides the fact that Cason’s property was an open field in which he had no reasonable expectation of privacy, because he
 
 openly allowed
 
 fishing and hunting on his property, he could have no reasonable expectation of privacy thereon anyway.
 

 Initially, we recognize the compelling state interest in safeguarding the wildlife and fisheries for the benefit of the people. In fact, it is well-settled that a state’s police powers includes safeguarding the wildlife and fisheries for the benefit of its people.
 
 State v. Weaver,
 
 2001-0467 (La.01/15/02), 805 So.2d 166,
 
 citing
 
 La. Const, art. IX, § 1. Further, the control and supervision of the wildlife of this state, including all aquatic life, is vested in the
 
 *602
 
 Department. La. Const, art. IX, § 7. We also note that several regulatory statutes authorize and empower the Department to perform its duty to safeguard the wildlife and fisheries of our state:
 

 La. R.S. 56:54(A): Wildlife enforcement agents of the enforcement division shall see that every person dealing in any way in any of the wildlife, fish, and game of the state in the territory assigned to him for which a license must be obtained, has in his possession, and is the owner of, an official license, and is in compliance with the laws, rules, and regulations under the jurisdiction of the department.
 

 La. R.S. 56:55(A): [A]ny commissioned wildlife enforcement agent of the enforcement division may visit, inspect, and examine, with or without search warrant, ... boat, ..., car, conveyance, automobile or other vehicle, ..., or any place of deposit for wild birds, wild quadrupeds, fish, or other aquatic life or any parts thereof whenever there is probable cause to believe that a violation has occurred.
 

 La. R.S. 56:55.2(A): To facilitate the effective protection of private and public rights and property and life throughout the state’s waterways, sea, and land, duly commissioned wildlife enforcement agents of the enforcement division of the Department of Wildlife and Fisheries ... shall, in addition to the authority otherwise conferred by law upon such officers, be vested with the same authority and powers conferred by law upon other law enforcement officers of this state....
 

 | fiWe also take judicial notice of the mission of the Department:
 

 To manage, conserve, and promote wise utilization of Louisiana’s renewable fish and wildlife resources and their supporting habitats through replenishment, protection, enhancement, research, development, and education for the social and
 
 economic
 
 benefit of current and future generations; to provide opportunities for knowledge of and use and enjoyment of these resources; and to promote a safe and healthy environment for the users of the resources.
 

 The mission of the Enforcement Division of the Department states that it:
 

 ... is to protect Louisiana’s fish and wildlife resources and their habitats by enforcing related laws and regulations and to create a secure environment for the maximum enjoyment of hunting, fishing, recreational boating and affiliated outdoor activities.
 

 We are committed to fulfilling this mission throughout the entire state. Nine regional offices are located throughout the state to provide information as well as assistance to outdoor enthusiast.
 

 So considering, we are mindful of the far-reaching implications this appeal has on the interests of the Department to enforce our state laws protecting our wildlife and fisheries.
 

 In the case
 
 .mb judice,
 
 we do not agree that the agents’ entry onto Cason’s land was without suspicion as stated by the trial court. Whereas the open fields doctrine does not require probable cause for entry onto an open field, under the facts of this case we believe that the agents in question did indeed have a sufficient reason to enter onto Cason’s property to make a compliance check of the fisherman utilizing his boat launch. Here, the pickup truck backed up to the boat launch spotted by the Department’s agents was akin to the tip of illegal drug activity in
 
 Oliver.
 
 Simply put — the pick-up truck backed up to a boat launch was basically a tip or indication that fishing activity might be occurring in the area. Obviously, by their nature, |7game and/or fishing viola
 
 *603
 
 tions occur in open fields, woods, lakes, rivers or streams, much of which will be private property. Furthermore, there are certain instrumentalities that go along with the sports of hunting and fishing. In our “sportsman’s paradise,” it is certainly not uncommon to be driving down a roadway and see vehicles, particularly pick-up trucks with trailers for the necessary all-terrain-vehicles, parked at the periphery of a field or woods; it is also quite ordinary to see vehicles (again, often pick-up trucks) with boat-trailers backed up to boat launches or parked near a body of water— all of these reasonable indicators that some sort of hunting or fishing is occurring nearby. Notably, as experienced agents with the Department, Schufft and Clinton had their experience, training, and knowledge to recognize the signs of hunting and fishing activity. An indication of fishing activity is what these agents witnessed — giving them reasonable suspicion to enter onto the property to see if there was indeed such activity going on. When the agents then heard a gunshot, they had further reason to suspect that hunting might have been taking place on the property.
 
 [1]
 
 Thus, we conclude that the agents did indeed have reasonable suspicion to enter onto Cason’s property to inspect the open field where fishing and/or hunting activity might have been occurring.
 

 Next, Cason did not have a reasonable expectation of privacy on his property considering that he allowed hunting and fishing activity to occur or commence from there. We note that Cason testified to the following: his family fished and hunted on the property; he allowed “Mr. Ed” to use his boat launch from which he commenced his commercial fishing; he allowed 1 xother commercial fisherman to use the boat launch on his property; he allowed friends to hunt on his property; and he expected people on his property to follow the game laws of the state of Louisiana. Thus, it is clear that Cason allowed hunting and fishing activity on his property. Further, Ca-son admitted he would not have wanted any game or fishing violations occurring on his property. That being the case, it is entirely reasonable then that the Department’s agents should have authority to enter onto his land to ensure that the laws of this state were being complied with. We do not believe it was reasonable for Cason to have
 
 any
 
 expectation of privacy in light of the fact that he openly allowed people to use this property, albeit private property, for hunting and fishing.
 

 Finally, we note the case of
 
 United State v. Greenhead,
 
 256 F.Supp. 890 (N.D.Cal.1966), where the United States Fish and Wildlife Service agents were checking all of the hunting clubs in their area at the end of duck season to ensure that the clubs were complying with the tagging and possession laws. In
 
 Greenhead,
 
 the agents unlocked a gate and entered the land of the subject hunting club without any suspicion of criminal wrongdoing. No probable cause for the search existed, but the trial court determined that of no consequence considering the possible consequences of ineffective game management. The trial court noted:
 

 I would have supposed that as true sportsmen the members of Greenhead, Inc., would have welcomed the Wardens on their property in order to make certain that wild ducks do not go the way of the heath hen and the passenger pigeon, if for no other good reason. And, of course, as law-abiding citizens I would have supposed that they would have wanted to be certain that no one had violated the law on their premises.
 

 
 *604
 
 | (¡Certainly, Cason would agree that he did not want the wildlife and fisheries laws of our state to be violated on his property. If we were to affirm the trial court’s judgment, we would in effect remove the teeth given to the Department to enforce Louisiana’s hunting and fishing regulations. Moreover, if Wildlife and Fisheries agents were not allowed to enter onto private property, the trial court’s judgment would have the chilling effect of allowing sportsmen in our state to virtually hunt and fish freely on private lands without fear of penalty for violations. Such a conclusion would be to the detriment of all the citizens of our state.
 

 Considering our decision herein, any discussion of the remaining assignments of error raised by the Department and Cason is pretermitted.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court in favor of Edgar Cason and against the State of Louisiana, Department of Wildlife and Fisheries, Roy S. Schufft and Jason Clinton is reversed. All costs of these proceedings are assessed to Cason.
 

 REVERSED.
 

 MOORE, J., concurs in the result.
 

 [1]
 

 . Notably, the property had a “hunting club” sign posted on the fence.