STATE of Wisconsin, Plaintiff-Respondent,

v.

Phyllis BAUER, Defendant-Appellant. †

[Case No. 85–1022–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Ernie WASSON, Defendant-Appellant. †

[Case No. 85–1023–CR.]

Court of Appeals

*Nos. 85–1022–CR, 85–1023–CR. Submission on briefs October 9, 1985.—Decided November 20, 1985.*
(Also reported in 379 N.W.2d 895.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants, there was a brief by *William E. McCarty* and *F. Thomas Olson* of *Charne, Glassner, Tehan, Clancy & Taitelman s.c.* of Milwaukee.

For the plaintiffs-respondents, there was a brief by *Kathryn W. Foster,* assistant district attorney of Waukesha County.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. This is an appeal from a judgment of the circuit court for Waukesha county convicting the appellants of cruelty to animals, failure to provide animals with sufficient food and failure to provide animals with proper shelter, contrary to secs. 948.02, 948.13(1) and 948.13(3)(b) and (4), Stats. Prior to trial, the appellants sought to exclude the evidence against them on the ground that it was the product of an unlawful search and seizure. The circuit court's denial of the appellants' suppression motion and its decision to hold the appellants responsible for the costs incurred by Waukesha county for the care of the appellants' horses form the basis of this appeal. We affirm the judgment.

The appellants, Phyllis Bauer and Ernie Wasson, rented part of a farm and barn in Menomonee Falls where they kept twelve horses. Sharon Greenwald, the humane officer for Waukesha county, visited the property several times between January 1983 and March 1984 in response to complaints about conditions on the farm

403

and problems the appellants were having with getting water and electricity to the barn.

On March 26, 1984, Glen Covey, the state humane officer, informed Greenwald that Bauer had called to tell him a horse had died on the appellants' property and to request some assistance. Later that day, Greenwald happened to meet the appellants on the steps at the Waukesha County Courthouse. Bauer told Greenwald that a horse had died on the property and that she had notified Covey since she felt Greenwald could not help her.

The next day, Greenwald received a call from Sidney Iwins, the owner of the property, telling her that there was a dead horse on the property and asking for her help. Greenwald called the Waukesha Animal Hospital and requested that an equine specialist meet her at the property. Dr. Howard Cook was called at about 10:00 a.m. He met Greenwald and a policeman at the property. The dead horse was lying in the driveway.

Dr. Cook examined the dead horse in the presence of Greenwald and determined the primary cause of death to be starvation. Greenwald and Dr. Cook then inspected the paddock area of the barn, observing the horses. There was no feed, all of the animals' feet needed trimming and they were standing in solid horse manure without any bedding in any of the pens. Dr. Cook's opinion was that two horses were near death and the condition of all the horses was "awful."

Based upon her own observations of the condition of the horses on March 27 and Dr. Cook's autopsy information, Greenwald decided to seize the animals pursuant to sec. 948.15(2), Stats. Ten of the horses were removed from the property by J & J Ranch on March 28 and the two remaining horses were removed on March 29. The appellants were present during the actual removal and Wasson was advised by Greenwald that the horses were being taken to J & J Ranch. Bauer and Wasson were subse-

quently charged with and convicted of violating secs. 948.02,[1] 948.13(1)[2] and 948.14(3)(b) and (4),[3] Stats.

The first issue on appeal is whether the circuit court erred in denying the motion to suppress the evidence. The appellants claim that both the evidence regarding the dead horse and the evidence as to the other animals obtained during subsequent search of the property were acquired in violation of the fourth amendment's prohibition of unreasonable searches and seizures. We will discuss each claim separately, treating first the finding of the dead horse in the driveway.

The primary objective of the fourth amendment is the protection of privacy. *Cardwell v. Lewis,* 417 U.S. 583, 589 (1974). Only those government intrusions that infringe upon a privacy interest violate the fourth amendment. *Katz v. United States,* 389 U.S. 347, 350 (1967). *Katz* established a two-prong test to determine whether a per-

---

[1] Section 948.02, Stats., states:

**Mistreating animals.** No person may treat any animal, whether belonging to himself or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices.

[2] Section 948.13(1), Stats., states:

**PROVIDING PROPER FOOD AND DRINK TO CONFINED ANIMALS.** No person owning or responsible for confining or impounding any animal may fail to supply the animal with a sufficient supply of food and water as prescribed in this section.

(1) **Food.** The food shall be sufficient to maintain all animals in good health.

[3] Section 948.14(3)(b) and (4), Stats., states:

**SPACE REQUIREMENTS.** Enclosures shall be constructed and maintained so as to provide sufficient space to allow each animal adequate freedom of movement. Inadequate space may be indicated by evidence of debility, stress or abnormal behavior patterns.

(4) **Sanitation standards.** Minimum standards of sanitation for both indoor and outdoor enclosures shall include periodic cleaning to remove excreta and other waste materials, dirt and trash so as to minimize health hazards.

son has been subjected to an unreasonable search or seizure under the fourth amendment. First, the complaining party must have exhibited an actual expectation of privacy, and second, the expectation must be one that society is prepared to recognize as reasonable. *Id.* at 361 (Harlan, J., concurring).

Thus, for a search or seizure to be unreasonable, it must invade a justifiable expectation of privacy. "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz* at 351.

The focus of the fourth amendment inquiry is not upon the ability of third parties to gain access to or view the property but rather upon the manner in which the possessor holds the property out to the public. *State v. Grawien,* 123 Wis.2d 428, 436–37, 367 N.W.2d 816, 820 (Ct. App. 1985).

■

Whether one has a justifiable expectation of privacy must be looked at in light of all the surrounding circumstances. *Rakas v. Illinois,* 439 U.S. 128, 152 (1978) (Powell, J., concurring), *reh'g denied,* 439 U.S. 1122 (1979). Applying fourth amendment principles to the circumstances of this case, we hold that the viewings and subsequent autopsy of the dead horse did not constitute a search in violation of fourth amendment protections.

The appellants rented the barns and fields of a farm. On the same property was a home rented by another individual. Between the barns and the residence there was a common driveway, completely outside the confines of any barn or fenced-in area. The dead horse was lying on this common driveway. No unreasonable search occurs where police officers who enter private property restrict their movements to those areas generally made accessible to visitors, such as driveways, walkways or similar passageways. *See United States v. Reed,* 733 F.2d 492, 501 (8th Cir. 1984).

It is apparent that the appellants did not attempt to conceal the horse or the fact of its death. The dead horse lay on the common driveway and could be seen from the public roadway. Greenwald received a call from Iwins, the owner of the property, who informed her there was a dead horse of the appellants on his property. The tenant of the house on the property could see the horse on the driveway. He reported that the animal was not moved between March 21 and March 27.

Bauer called both the police department and Glen Covey, the state humane officer, asking for assistance in getting rid of the horse. Bauer also told Greenwald that a horse had died on the property. Thus, the appellants had for all practical purposes abandoned the dead horse and their only interest in it was in having it removed from the driveway and discarded. Warrantless seizure of property whose owner has abandoned it or requested another to destroy or get rid of it does not violate the fourth amendment. *See United States v. Cella,* 568 F.2d 1266, 1283 (9th Cir. 1977); *United States ex el. Fein v. Deegan,* 298 F. Supp. 359, 365 (S.D.N.Y. 1967), *aff'd,* 410 F.2d 13 (2d Cir.), *cert. denied,* 395 U.S. 935 (1969); *People v. Hejka,* 303 N.E.2d 433, 439 (Ill. App. Ct. 1973).

Under these circumstances, the appellants had no reasonable expectation of privacy as to the dead horse. The viewing of the animal by Greenwald and Dr. Cook and the subsequent autopsy did not constitute an unlawful search or seizure.

We next discuss the subsequent warrantless search of the barn and paddock area and seizure of the horses. The state justifies the search and seizure on the basis of the emergency doctrine.

The emergency doctrine has been defined generally as follows:

> Law enforcement officers may enter private premises
> without either an arrest or a search warrant to pre-

serve life or property, to render first aid and assistance, or to conduct a general inquiry into an unsolved crime, provided they have reasonable grounds to believe that there is an urgent need for such assistance and protective action, or to promptly launch a criminal investigation involving a substantial threat of imminent danger to either life, health, or property, and provided, further, that they do not enter with an accompanying intent to either arrest or search.

*State v. Kraimer,* 99 Wis.2d 306, 314, 298 N.W.2d 568, 572 (1980), *cert. denied,* 451 U.S. 973 (1981), quoting *The Emergency Exception to the Warrant Requirement Under the Fourth Amendment,* 22 Buffalo L. Rev. 419, 426 (1972).

Our supreme court has adopted a two-step analysis for determining when a warrantless search is justified under the emergency doctrine. Under this analysis, both subjective and objective tests are used. First, the searching officer must be motivated by a perceived need to render aid or assistance. Second, it must be found that a reasonable person under the circumstances would have thought an emergency existed. *State v. Boggess,* 115 Wis.2d 443, 450–51, 340 N.W.2d 516, 521 (1983); *State v. Prober,* 98 Wis.2d 345, 365, 297 N.W.2d 1, 12 (1980).

Both elements are satisfied in the present case. Greenwald was present during the autopsy of the carcass. Dr. Cook's examination of the dead horse indicated that it was an extremely emaciated two-year-old horse which had a layer of skin over a rack of bone and did not weigh over 200 pounds. Dr. Cook stated that the primary cause of death was starvation. He passed this information on to Greenwald who was familiar with continuing problems at the appellants' residence, having been so advised on numerous occasions by the appellants themselves. In addition, on January 17, 1983, Greenwald had received a complaint that the animals were being housed and fed inadequately. Greenwald's observations of the dead horse,

the information given to her by Dr. Cook and her prior knowledge of conditions at the appellants' farm were sufficient to lead her to believe that the other horses needed immediate aid. Further, Dr. Cook and Greenwald could actually see the other horses from their location on the driveway where the autopsy was performed. They then entered the unlocked barn in an attempt to aid the other animals.

The doctrine of emergency is "founded upon the actions of police which are considered reasonable. The element of reasonableness is supplied by the compelling need to assist the victim or apprehend those responsible, not the need to secure evidence." *State v. Pires,* 55 Wis.2d 597, 604, 201 N.W.2d 153, 157 (1972) (footnote omitted); *see also State v. Davidson,* 44 Wis.2d 177, 194, 170 N.W.2d 755, 764 (1969), cited in *West v. State,* 74 Wis.2d 390, 400, 246 N.W.2d 675, 681 (1976).

Such a compelling need was demonstrated in this case. This need was to stop the ongoing suffering of the animals. The exigent standard test applies to situations involving mistreatment of animals. Cruelty to animals is a statutory offense. It is therefore state policy to render aid to relatively vulnerable and helpless animals when faced with people willing or even anxious to mistreat them. *See State v. Stanfield,* 105 Wis.2d 553, 559, 314 N.W.2d 339, 342 (1982).

The appellants argue that the horses were seized not to render aid but to secure evidence, since the actual seizure of the horses took place the day after Greenwald and Dr. Cook observed the horses in the barn and paddock area. This argument is meritless. Greenwald had to make arrangements for the transportation and housing of the animals. As a result, Greenwald was not able to effectuate the actual seizure until the next day. Greenwald acted as

promptly and properly as possible to assure the horses' safety and well-being.

The remaining issue is whether the full cost of the horses' care was properly assessed against the appellants.

The horses were kept at the J & J Ranch in the custody of Waukesha county. The county incurred the sum of $18,591.89 for the cost of removal and care between March 28–29, 1984 and February 21, 1985. The court assessed these costs against the appellants jointly and severally, pursuant to sec. 948.17(1) and (2)(d), Stats.

The appellants cite sec. 948.15(2), Stats., which requires that when any animal is removed by a law enforcement officer, the owner, if known, shall be immediately notified. They allege that neither appellant was given notice and neither was given the opportunity to redeem the horses by paying the cost of the horses' care. The appellants claim that if they were given immediate notice, they could have had an opportunity to redeem the horses for a modest cost under sec. 948.15(3).

Section 948.15(2), Stats., states:

> Any law enforcement officer may remove, shelter and care for any animal found to be cruelly exposed to the weather, starved or denied adequate water, neglected, abandoned or otherwise treated in a cruel manner and may deliver such animal to another person to be sheltered, cared for and given medical attention, if necessary. In all cases the owner, if known, shall be immediately notified and such officer, or other person, having possession of the animal shall have a lien thereon for its care, keeping and medical attention and the expense of notice.

We reject the appellants' argument. First, they were given proper notice. They were present while the animals were being removed; Greenwald told Wasson that the horses were being transported to J & J Ranch. Nothing in the statutes requires written notice. Actual notice, im-

mediately given, appears to be all that is necessary. Therefore, sec. 948.15(2), Stats., was satisfied.

Moreover, even had there not been notice, we reject any argument that there is a right of redemption in this case under sec. 948.15(3), Stats. To allow owners of neglected animals to immediately redeem them would defeat the purpose and intent of the statute. The principal aim in construing a statute is to achieve a reasonable construction which will effectuate the statute's purpose. *State ex rel. Melentowich v. Klink,* 108 Wis.2d 374, 380, 321 N.W.2d 272, 275 (1982).

Section 948.15(3), Stats., provides:

> If the owner or custodian is unknown and cannot with reasonable effort be ascertained, *or does not within 5 days after notice redeem the animal* by paying the expenses incurred, it may be treated as a stray and dealt with as such. [Emphasis added.]

The language of the statute indicates that the state may treat the animals as strays. The word "may" has generally been interpreted as permissive, allowing the actor to use discretion. *Miller v. Smith,* 100 Wis.2d 609, 616, 302 N.W.2d 468, 471 (1981).

The purpose of sec. 948.15(3), Stats., is to allow an animal to be considered a stray under certain conditions. The section concerns disposal. It gives law enforcement agencies the authority to deal with "wandering beasts" whose owner is unknown. *See Roberts v. Barnes,* 27 Wis. 422 (1871). Owners, by redeeming the animals, can prevent their assignation as strays.

This case does not have anything to do with strays; it is a case of neglect and cruelty. A statute meant to save wayward animals from the fate of being considered strays is inapposite to the case here.

██ The court was justified in assessing costs to the appellants for care of the horses.

*By the Court.*—Judgment affirmed.