Melisa URMANSKI, d/b/a Melisa's Mistake, Plaintiff-Appellant,†

v.

TOWN OF BRADLEY, Defendant-Respondent.

Court of Appeals

*No. 99–2330. Submitted on briefs April 10, 2000.——Decided May 23, 2000.*

## 2000 WI App 141

(Also reported in 613 N.W.2d 905.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond, and *Randall D.B. Tigue* of *Randall Tigue Law Office, P.A.* of Minneapolis, MN.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Harry R. Hertel* of *Hertel & Gibbs, S.C.* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Melisa Urmanski, d/b/a Melisa's Mistake, appeals from an order upholding the constitutionality of a Town of Bradley ordinance prohibiting nudity on premises operating under a retail Class B liquor license. Urmanski argues that the ordinance is facially overbroad and, thus, violates the First and Fourteenth Amendments to the United States Constitution. Because the Town's ordinance is a content-neutral regulation, justified under *O'Brien's*[1] four-factor test, we conclude the ordinance is constitutional and affirm the judgment.

## BACKGROUND

¶ 2. Urmanski operates an establishment known as "Melisa's Mistake," pursuant to a retail Class B liquor license issued by the Town. In September 1998, Melisa's Mistake began featuring live topless dancing. In November, the Town issued Urmanski an administrative summons and complaint advising her that her liquor license could be revoked for violating the Town's

---

[1] *See United States v. O'Brien*, 391 U.S. 367 (1968).

nudity ordinance. TOWN OF BRADLEY, WIS., CODE § 5.20(5) provides:

(a) No retail Class B licensee, shall suffer or permit any person to appear on licensed premises in such manner or attire as to expose to view any portion of the pubic area, anus, vulva, or genitals, or any simulation thereof, nor shall suffer or permit any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof.

(b) Any licensee who shall violate the preceding paragraph shall be subject to revocation, suspension or refusal to renew the license as set forth in s. 125.12 Stats., and the procedures in such section shall govern.

¶ 3. On November 20, the Town suspended Urmanski's liquor license for sixty days. Urmanski subsequently filed suit against the Town, seeking a judgment pursuant to 42 U.S.C. § 1983 declaring the Town's ordinance void under the First and Fourteenth Amendments to the United States Constitution, and art. I, § 3, of the Wisconsin Constitution. The circuit court limited the ordinance's application to the public areas of premises holding a class B liquor license and under this limiting construction, determined that the ordinance was constitutional. This appeal followed.

## ANALYSIS

¶ 4. Urmanski's challenge to the constitutionality of the Town's nudity ordinance presents a question of law that this court reviews de novo. *See Lounge*

*Mgmt., Ltd. v. Town of Trenton*, 219 Wis. 2d 13, 19–20, 580 N.W.2d 156 (1998). In general, statutes and ordinances "are the beneficiaries of a presumption of constitutionality which the attacker must refute." *Id.* at 20. Where an ordinance regulates the exercise of First Amendment rights, however, "the burden shifts to the government to defend the constitutionality of that regulation beyond a reasonable doubt." *Id.*

¶ 5. The United States Supreme Court has recognized that although "being in a 'state of nudity' is not an inherently expressive condition . . . nude dancing . . . is expressive conduct." *City of Erie v. Pap's A.M.*, 120 S. Ct. 1382, 1391 (2000). When "speech" and "nonspeech" elements are combined in the same course of conduct, however, "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). In such instances, the government may infringe upon First Amendment freedoms to regulate conduct as long as:

> (1) the targeted conduct falls within the domain of state regulatory power; (2) the statutory scheme advances important or substantial government interests; (3) the state's regulatory efforts are unrelated to the suppression of free expression; and (4) the regulations are narrowly tailored.

*Lounge*, 219 Wis. 2d at 20–21 (citing *O'Brien*, 391 U.S. at 376–77). Before *Erie*, however, the Court had splintered over the permissible manner in which the

government could reasonably regulate the protected expression inherent in nude dancing.[2]

## I. *Erie* AND CONTENT-NEUTRAL RESTRICTIONS ON CONDUCT

¶ 6. *Erie* involved a public indecency ordinance that made it an offense to "knowingly or intentionally appear in public in a 'state of nudity.'" *Erie*, 120 S.Ct.

---

[2] The parties here cite *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), in which a plurality of the court applied the four-factor *O'Brien* test, "but disagreed among themselves over the requisite important or substantial interest that the state needed to show under *O'Brien* when infringing on First Amendment expression." *Lounge Mgmt., Ltd. v. Town of Trenton*, 219 Wis. 2d 13, 21, 580 N.W.2d 156 (1998); *see also O'Brien*, 391 U.S. at 376–77. Although the *Barnes* Court upheld the constitutionality of an Indiana statute banning public nudity, no five members of the Court agreed on a single rationale for that conclusion.

In *City of Erie v. Pap's A.M.*, 120 S.Ct. 1382 (2000), a majority of the Court clarified that the government's interest in preventing the negative secondary effects associated with adult entertainment establishments justified any de minimis intrusions on the expression inherent in nude dancing. *See id.* at 1394. Four justices, in an opinion authored by Justice O'Connor, set out the appropriate analytical framework. Although Justice Souter agreed with the analytical approach employed by the plurality, he dissented from the judgment. *See id.* at 1402. A majority of the Court nevertheless concluded that *Erie*'s anti-nudity ordinance passed constitutional muster.

Because the application of *Erie*'s analytical framework is dispositive of the issue presented in the instant case, we refrain from addressing Urmanski's alternative arguments. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (only dispositive issues need be addressed).

at 1388.[3] The Court first determined what level of scrutiny would apply to the ordinance. It noted that to determine what level of scrutiny applied, it had to decide "whether the State's regulation is related to the suppression of expression." *Id.* at 1391. The Court recognized:

> If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" standard from *O'Brien* for evaluating restrictions on symbolic speech. If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard.

*Id.*

---

[3] The ordinance at issue in *Erie* defined "nudity," as:

the showing of the human male or female genital [sic], pubic hair or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume, or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.

In turn, "public place" was defined to include:

all outdoor places owned by or open to the general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theaters, dance halls, banquet halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.

*Erie*, 120 S.Ct. at 1388 n.* (citing ord. 75–1994, codified as CITY OF ERIE, PENN., CODIFIED ORD. art. 711).

¶ 7. The Court recognized that the ordinance did "not target nudity that contains an erotic message; rather, it bans all public nudity, regardless of whether that nudity is accompanied by expressive activity." *Id.* By its terms, the *Erie* ordinance, like the ordinance in the instant case, regulated conduct alone. *See id.*

¶ 8. Despite language in the *Erie* ordinance's preamble suggesting that its actual purpose was to prohibit erotic dancing, the preamble also indicated that one purpose of the ordinance was to combat the negative secondary effects associated with adult entertainment establishments. *See id.* at 1392. The Pennsylvania Supreme Court concluded that although one goal of the ordinance was to combat negative secondary effects, a ban of this type "necessarily has the purpose of suppressing the erotic message of the dance." *Id.* The *Erie* Court rejected this conclusion and determined:

> [T]he ordinance does not attempt to regulate the primary effects of the expression, i.e., the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impacts on public health, safety, and welfare, which we have previously recognized are "caused by the presence of even one such" establishment.

*Id.* (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48 (1986)). The Court further concluded:

> [E]ven if Erie's public nudity ban has some minimal effect on the erotic message by muting that portion of the expression that occurs when the last stitch is dropped, the dancers at . . . such establishments are free to perform wearing pasties and G-strings. Any effect on the overall expression is *de minimis*.

*Id.* at 1393. Consequently, the Court noted, "[i]f States are to be able to regulate secondary effects, then *de minimis* intrusions on expression such as those at issue here cannot be sufficient to render the ordinance content based." *Id.* The Court held that *Erie*'s ordinance was, on its face, a content-neutral restriction on conduct and further recognized:

> Even if the city thought that nude dancing at clubs like [the one at issue in *Erie*] constituted a particularly problematic instance of public nudity, the regulation is still properly evaluated as a content-neutral restriction because the interest in combating the secondary effects associated with those clubs is unrelated to the suppression of the erotic message conveyed by nude dancing.

*Id.* at 1394.

¶ 9. As in *Erie*, the ordinance here was enacted, in part, to prevent the negative secondary effects associated with adult entertainment establishments. A post-enactment affidavit by John Huston, town chairman, stated, in relevant part, that it was his "understanding and belief" that the ordinance had been passed in order to promote important and substantial interests of the Town, including "[its interest in avoiding] the potential for secondary effects such as prostitution, sexual assault, and criminal activity which can occur when nudity takes place at locations where the consumption of public alcohol occurs."

¶ 10. The affidavit further intimated that the desire to avoid secondary effects was "based upon the information made available to the Town through the League of Municipalities, as well as other reliable sources, including legal opinions previously rendered

by the Supreme Court of the United States and the Supreme Court of the State of Wisconsin."[4]

¶ 11. Because, according to the affidavit, an asserted purpose of the Town's ordinance was to combat negative secondary effects, we conclude, consistent with *Erie*, that the instant ordinance is a content-neutral restriction on conduct. *See id.* at 1394.

## II. THE *O'Brien* TEST

¶ 12. After determining that the ordinance was content-neutral, the *Erie* Court applied the "less stringent" four-factor test from *O'Brien* for evaluating restrictions on symbolic speech and concluded that *Erie*'s ordinance passed constitutional muster. *See id.* at 1395. With regard to the first factor, "whether the government regulation is within the constitutional power of the government to enact," the Court held that "Erie's efforts to protect public health and safety are clearly within the city's police powers." *Id.* Applying this reasoning to the present case, the Town's efforts to promote public health and safety by preventing nega-

---

[4]Although Urmanski challenged the admissibility of the post-enactment affidavit before the circuit court, she does not now contend that it was inadmissible, but rather, simply characterizes it as self-serving. Certainly, it would have been better had there been a preamble to the ordinance, as in *Erie*, or some documents contemporary to the ordinance's enactment showing that the Town enacted the ordinance to prevent negative secondary effects. However, because Urmanski does not assert that the affidavit was otherwise inaccurate or incredible, and further because she has failed to develop any argument against its admissibility, we refrain from addressing it further. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (we will not develop an appellant's unsupported arguments).

tive secondary effects are well within the Town's police powers and thus satisfy the first factor of the *O'Brien* test.

¶ 13. The second factor of the *O'Brien* test asks "whether the regulation furthers an important or substantial government interest." *Id.* The *Erie* Court recognized the importance of regulating conduct through the public nudity ban and of combating the negative secondary effects associated with nude dancing. *See id.* It additionally noted that:

> in terms of demonstrating that such secondary effects pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities" to demonstrate the problem of secondary effects, *"so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."*

*Id.* (emphasis added).

¶ 14. Comparing *Erie* to cases with similar anti-nudity ordinances, the Court recognized that the nude dancing at issue in *Erie* was of the same character as the adult entertainment at issue in the other cases. It consequently held that "it was reasonable for Erie to conclude that such nude dancing was likely to produce the same secondary effects . . . [a]nd Erie could reasonably rely on the evidentiary foundation set forth in [the other cases] to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood." *Id.*

¶ 15. Here the asserted interest of combating the harmful secondary effects associated with adult entertainment establishments featuring nude dancing is "undeniably important." *Id.* Huston's affidavit indi-

cates that the Town's desire to prevent these secondary effects was based on information from the League of Municipalities as well as relevant legal opinions rendered by both the United States and Wisconsin Supreme Courts. We conclude that the Town could reasonably rely on the evidentiary foundation set forth in previous cases addressing negative secondary effects.

¶ 16. The third *O'Brien* factor asks whether the government interest is unrelated to the suppression of free expression. *See Erie*, 120 S.Ct. at 1397. As discussed earlier in this opinion, the ordinance does not attempt to regulate the primary effects of the expression, i.e., the effect on the audience of watching nude erotic dancing, but rather the secondary effects, such as the impact on public health, safety and welfare. *See id.* at 1392. Further, if the Town is to be able to regulate secondary effects, then any de minimis intrusions on expression are not sufficient to render the ordinance content based. *See id.* at 1394.

¶ 17. Finally, the fourth factor requires that the restriction be no greater than is essential to the furtherance of the government interest. *See id.* at 1397. With respect to this factor, the *Erie* Court reiterated that the ordinance there regulated conduct and "any incidental impact on the expressive element of nude dancing is *de minimis*." *Id.* It concluded that the restrictions on nudity, i.e., having to wear "pasties and G-strings," nevertheless left "ample capacity to convey the dancer's erotic message." Further, the Court upheld Erie's ordinance despite its ban against all public nudity. Here, the Town's ordinance bans nudity only at those establishments holding a retail Class B liquor license. Because the restrictions imposed by the Town's ordinance are less restrictive than those of *Erie*, we

determine that the Town's ordinance falls within the permissible class of restrictions that are no greater than essential to further the Town's interest in preventing negative secondary effects. Accordingly, we conclude that the ordinance at issue is constitutional as a content-neutral regulation, justified under *O'Brien's* four-factor test.

*By the Court.*—Order affirmed.