FLOAT-RITE PARK, INC., Plaintiff-Appellant,†

William MAGNUSON, Plaintiff-Co-Appellant,†

v.

VILLAGE OF SOMERSET, Defendant-Respondent.

Court of Appeals

*No. 00–1610. Submitted on briefs February 5, 2001.—Decided April 3, 2001.*

## 2001 WI App 113

(Also reported in 629 N.W.2d 818.)

†Petition to review denied.

On behalf of the plaintiff-appellant and plaintiff-co-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Timothy A. Yanacheck* of *Law Offices of Stilp & Cotton* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Float-Rite Park, Inc. and one of its patrons, William Magnuson (collectively, Float-Rite), appeal from orders dismissing their actions seeking a declaration that a Village of Somerset ordinance provision is unconstitutional. The sole issue is whether the provision, which allows law enforcement and others to enter the premises of licensed innertube rental businesses, is unconstitutional on its face. Because the ordinance is in harmony with accepted constitutional principles, the trial court's orders are affirmed.

¶ 2. Float-Rite operates an innertube rental business and campground located on private property in the Village of Somerset. It brought this suit seeking declaratory and injunctive relief prohibiting the Village from entering and patrolling its property pursuant to VILLAGE OF SOMERSET, WIS., ORDINANCE § 11.09(4), which applies to all licensees of innertube rental businesses in the Village. Section 11.09(4) provides:

> Access for Public Safety. All premises used by the licensee for the innertube rental business and open to the public, including campground areas operated by the licensee, shall be open to the Village police officers, firefighters, ambulance and emergency rescue squads. The licensee, by applying for and holding a Village tubing license, shall be deemed to have consented to such entry by Village police, firefighters, ambulance and emergency rescue squads for purposes of maintaining proper safety and welfare of the public.

¶ 3. The trial court denied Float-Rite's requests for declaratory and injunctive relief. Although Float-Rite initially challenged both the facial constitutionality of § 11.09(4) and the constitutionality of the ordinance as applied, the parties have stipulated to the dismissal of Float-Rite's challenge to the ordinance as applied. The sole remaining issue, therefore, is the facial constitutionality of § 11.09(4).

¶ 4. Float-Rite argues that § 11.09(4) authorizes nonconsensual, warrantless administrative searches of Float-Rite's commercial property in violation of the Fourth Amendment to the United States Constitution. Furthermore, Float-Rite argues that even if the Village is authorized to enact an ordinance allowing for war-

rantless and nonconsensual searches, the ordinance is unconstitutionally broad and ambiguous.

¶ 5. We reject Float-Rite's challenge to the ordinance because we disagree that it authorizes searches under the Fourth Amendment. The ordinance permits the personnel specified in § 11.09(4) to enter only those areas open to the public, which does not necessarily constitute a search. Furthermore, we interpret ·the ordinance as preserving the possibility that Float-Rite and its guests may have an expectation of privacy in certain areas on its grounds (*e.g.*, inside individual tents). Consequently, the ordinance is facially constitutional.

## LEGAL STANDARDS

¶ 6. Float-Rite's challenge to the constitutionality of § 11.09(4) presents a question of law that this court reviews de novo. *See Urmanski v. Town of Bradley*, 2000 WI App 141, ¶ 4, 237 Wis. 2d 545, 613 N.W.2d 905. In general, statutes and ordinances are the beneficiaries of a presumption of constitutionality which the attacker must refute. *Id.* An opponent of an ordinance must establish the ordinance's unconstitutionality beyond a reasonable doubt. *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 44, 235 Wis. 2d 610, 612 N.W.2d 59.

¶ 7. The cardinal rule of statutory construction is to preserve an ordinance and to find it constitutional if it is at all possible to do so. *See Chappy v. LIRC*, 136 Wis. 2d 172, 185, 401 N.W.2d 568 (1987). Thus, this court's duty, if possible, is to construe the ordinance to find it in harmony with accepted constitutional principles. *See State ex rel. Harvey v. Morgan*, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966). Furthermore, we may con-

41

strue constitutionally-deficient ordinances to include constitutionally-required provisions. *See State v. Mahone*, 127 Wis. 2d 364, 369, 379 N.W.2d 878 (Ct. App. 1985).

¶ 8. The Fourth Amendment and art. I, § 11, of the Wisconsin Constitution guarantee citizens the right to be free from unreasonable searches and seizures. *See State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). Wisconsin courts rely on the Supreme Court's interpretations of the search and seizure provisions of the United States Constitution in interpreting the Wisconsin Constitution. *See State v. Fry*, 131 Wis. 2d 153, 171–72, 388 N.W.2d 565 (1986).

¶ 9. The primary objective of the Fourth Amendment is the protection of privacy. *State v. Bauer*, 127 Wis. 2d 401, 405, 379 N.W.2d 895 (Ct. App. 1985). Only those government intrusions that infringe upon a privacy interest violate the Fourth Amendment. *Id.* The United State Supreme Court in *Katz v. United States*, 389 U.S. 347, 350 (1967), established a two-prong test to determine whether a person has been subjected to an unreasonable search or seizure under the Fourth Amendment. *Bauer*, 127 Wis. 2d at 405–06. First, the complaining party must have exhibited an actual expectation of privacy and second, the expectation must be one that society is prepared to recognize as reasonable. *Id.* at 406. Thus, for a search or seizure to be unreasonable, it must invade a justifiable expectation of privacy. *Id.*

¶ 10. The Fourth Amendment reasonableness standard applies to administrative inspections of commercial premises. *See See v. City of Seattle*, 387 U.S.

541, 545–46 (1967). However, warrantless inspections of commercial premises are not necessarily unreasonable, especially in pervasively-regulated industries. *See Lundeen v. Department of Ag., Trade & Cons. Prot.*, 189 Wis. 2d 255, 261, 525 N.W.2d 758 (Ct. App. 1994).

### DISCUSSION

¶ 11. The parties' briefs devote considerable attention to whether innertube rental businesses and campgrounds, especially those with liquor licenses, are pervasively-regulated industries. We need not reach this issue because we conclude that innertube rental businesses, including those with campgrounds, do not have a justifiable expectation of privacy in areas open to the public. *See Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

¶ 12. We begin with the proposition that not all entries onto commercial property constitute a search under the Fourth Amendment. A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *Maryland v. Macon*, 472 U.S. 463, 469 (1985). Professor Wayne R. LaFave has commented that although businesspersons, like the occupants of a residence, have a constitutional right to go about their business free from unreasonable official entries onto their private commercial property, business and commercial premises are not as private as residential premises. *See* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 2.4(b), at 531 (3d ed. 1996). Consequently,

> there are various police investigative procedures which may be directed at such premises without the

43

police conduct constituting a Fourth Amendment search. *Katz v. United States* teaches that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." This means "that as an ordinary matter law enforcement officials may accept a general public invitation to enter commercial premises for purposes not related to the trade conducted thereupon." On this basis, courts have consistently held that police, albeit motivated by an investigative purpose, conducted no search by merely entering such premises as a bus terminal, auto repair shop, salvage yard, used car lot, dock, real estate office, courier company office, motel, hospital, pool hall, bar, restaurant, furniture store, bookstore, or variety store. The "implied invitation for customers to come in," of course, extends only to those times when the premises are in fact "open to the public"; the mere fact that certain premises are open to the public at certain times does not justify entry by the police on other occasions.

*Id.* at 531–32 (citations omitted; footnotes omitted); *see also Maryland*, 472 U.S. at 469 (officer who entered adult bookstore and examined the wares intentionally exposed to all shoppers did not infringe a legitimate expectation of privacy and therefore officer's actions did not constitute a search within the meaning of the Fourth Amendment).

¶ 13. Consistent with these cases, Village personnel acting pursuant to the ordinance do not *necessarily* infringe a legitimate expectation of privacy when they enter an innertube rental business and campground. We highlight the word *necessarily* because when a party contests the lawfulness of an arrest or seizure, the party must establish both an

actual (subjective) and an objectively-reasonable expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979). Thus, the party must first, by his or her conduct, exhibit an actual, subjective expectation of privacy. *See id.* The second question is whether the individual's expectation, viewed objectively, is justifiable under the circumstances. *Id.* We have not been asked to evaluate whether a specific entry to Float-Rite's property constituted a search and, therefore, we can only conclude that under some circumstances, entries pursuant to the ordinance would not constitute a search under the Fourth Amendment.[1]

¶ 14. Next, we must apply these principle to interpret § 11.09(4). The first sentence of the ordinance provides, "All premises used by the licensee for the innertube rental business and open to the public, including campground areas operated by the licensee, shall be open to the Village police officers, firefighters, ambulance and emergency squads." We read this sentence as authorizing no more than those inspections already allowed by the Fourth Amendment. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978) ("What is observable by the public is observable, without a warrant, by the Government inspector as well.").

¶ 15. The second sentence of § 11.09(4) states, "The licensee, by applying for and holding a Village

---

[1] Additionally, we note that Village personnel may have other legitimate bases for entering the property, such as when they have probable cause to believe a crime is being committed. Because we have been asked to evaluate only the facial constitutionality of the ordinance, we do not address the parties' arguments with respect to other bases for entry, including the Village's argument that it can enter Float-Rite's property because Float-Rite holds a liquor license.

tubing license, shall be deemed to have consented to such entry by Village police, firefighters, ambulance and emergency rescue squads for purposes of maintaining proper safety and welfare of the public." This sentence could be interpreted to suggest that licensees relinquish their Fourth Amendment rights in exchange for their licenses. However, the Village wisely does not rely on such an argument, because a state actor cannot constitutionally condition the receipt of a benefit, such as a liquor license or an entertainment permit, or, as in this case, an innertube rental business license, on an agreement to refrain from exercising one's constitutional rights. *See G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

¶ 16. Accordingly, we conclude both sentences of the ordinance simply restate the Fourth Amendment law that already applies to commercial businesses. The benefit of the ordinance is that it provides licensees with additional notice that the Village intends to enter areas open to the public. Consistent with Fourth Amendment jurisprudence, the personnel identified in the ordinance may enter those areas open to the public, at times the areas are open to the public. *See Barlow*, 436 U.S. at 315.

¶ 17. Furthermore, the personnel will not have unlimited access to every area of the premises. What a person seeks to preserve as private, even in an area accessible to the public, in certain circumstances may be constitutionally protected. *See Katz*, 389 U.S. at 351. Float-Rite and its patrons, therefore, may in some circumstances have a protected interest in privacy in some areas of the premises. For instance, courts have recognized that a person can have an objectively-rea-

46

sonable expectation of privacy in a tent on private property, *see LaDuke v. Nelson*, 762 F.2d 1318, 1326 n.11, 1332 n.19 (9th Cir. 1985), *modified,* 796 F.2d 309 (9th Cir. 1986), or in a tent in a public campground, *see United States v. Gooch*, 6 F.3d 673, 677 (9th Cir. 1993).[2]

¶ 18. Finally, we note that it is possible the Village, purporting to act pursuant to the ordinance, might conduct unreasonable, unconstitutional searches. This possibility does not make the ordinance unconstitutional. The remedy in such is a case is to challenge the ordinance as applied, or to move to exclude evidence produced during an unconstitutional search. We are bound to construe the ordinance, if possible, to find it in harmony with accepted constitutional principles. *See Morgan*, 30 Wis. 2d at 13. Accordingly, we construe the ordinance as providing the Village no greater right to enter the premises than that already afforded by the Fourth Amendment, which includes the right to have law enforcement and other Village personnel enter those areas open to the public, at times they are open to the public.

---

[2] Float-Rite, citing *United States v. Gooch*, 6 F.3d 673, 677 (9th Cir. 1993), argues that because a campground becomes a place of short-term residence, patrons have a reasonable expectation of privacy. Although *Gooch* held that campers can have an objectively-reasonable expectation of privacy in their tents, we reject Float-Rite's suggestion that the entire campground would necessarily fall within that expectation of privacy. As previously noted, specific allegations that the Village has violated the Fourth Amendment will need to be considered on an individual basis.

*By the Court.*—Orders affirmed.