Walter L. LUNDEEN, Jr., Plaintiff-Appellant,†

v.

Wisconsin DEPARTMENT OF AGRICULTURE, TRADE & CON-
SUMER PROTECTION, Defendant-Respondent.

Court of Appeals

*No. 94–0186. Submitted on briefs September 13,
1994.—Decided November 8, 1994.*

(Also reported in 525 N.W.2d 758.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *David D. Danielson* of St. Croix Falls.

For the defendant-respondent the cause was submitted on the brief of *James D. Doyle*, attorney general and *Warren D. Weinstein*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Walter Lundeen appeals a judgment dismissing his petition for review and affirming the decision of the Wisconsin Department of Agriculture, Trade and Consumer Protection, which concluded that the department properly issued a notice of intent to suspend his Grade A dairy license and properly charged him with reinspection fees after a warrantless inspection uncovered several violations of WIS. ADM. CODE § ATCP 60. Lundeen contends the warrantless inspection violated his Fourth Amendment rights because: (1) The search was made without prior notification and without Lundeen's presence; and (2) the inspectors had unbridled discretion to search his property and belongings. Because we conclude that the statutory scheme provides adequate constitutional protection for warrantless searches, we affirm the judgment.

The facts of this case are undisputed. Lundeen operates a dairy farm in Burnett County, Wisconsin,

and holds a Grade A dairy permit. Due to previous disputes with the Department of Agriculture and Trade, Lundeen wrote a letter to the department demanding that he be given advanced notice of the department's intent to inspect his farm so that he could be present during the inspection. On April 24, 1991, at approximately 12 p.m., two department inspectors arrived at Lundeen's farm to perform a semi-annual Grade A inspection of Lundeen's facilities. Although the inspectors were aware of Lundeen's previous demand, they did not provide Lundeen with advanced notice of their intent to inspect his farm. The inspectors did, however, unsuccessfully attempt to find Lundeen both in his house and around his barn. After determining that no one was home, the inspectors proceeded to inspect the farm and discovered three violations of WIS. ADM. CODE § ATCP 60.

In October, the inspectors returned for another semiannual inspection of Lundeen's farm. Once again, the inspectors did not provide Lundeen with advance notice of the inspection, but they did attempt to locate Lundeen prior to the search. Lundeen was not home, and the inspectors proceeded with their search. The search uncovered essentially the same three violations for which Lundeen had previously been cited. As a result of these double violations, the inspectors issued a "Notice of Intent to Suspend" Lundeen's Grade A dairy permit. The inspectors also set a reinspection date for the following month. This date denoted the day by which Lundeen was required to have the violations corrected in order to avoid a suspension of his Grade A permit.

In November, the inspectors returned to perform the reinspection of Lundeen's farm. Lundeen was present at this inspection. At this inspection, three of the

violations were corrected, and an exemption was given for a fourth violation that could not be corrected at that time due to bad weather. As a result, Lundeen's permit was not suspended.

A hearing was subsequently held before the department to determine whether the warrantless inspections were proper. The department found that such warrantless inspections are proper; however, the department declined to consider the constitutional issue raised by Lundeen. Lundeen then petitioned the circuit court for judicial review. The circuit court entered a judgment affirming the department's decision and dismissing Lundeen's petition for review.

The standards to which dairy farms must conform are specifically stated in WIS. ADM. CODE § ATCP 60.06-60.23. Under WIS. ADM. CODE § ATCP 60.24(2), the department is required to inspect Grade A dairy farms for violations of these standards "at least once every 6 months." The code further states that "for purpose of conducting a lawful inspection under this chapter, the department may exercise its authority under ss. 93.08, 93.15(2) and 97.12(1), STATS." These statutes provide for the inspection of dairy farm premises within reasonable hours and specifically enumerate the places and items the department may inspect.

■

Lundeen contends that the scope of the statutes and administrative code governing dairy farm inspections is too broad and that the department's warrantless inspection of his farm therefore violated the Fourth Amendment. Specifically, Lundeen argues that the warrantless inspection of his farm was unconstitutional because the department: (1) did not provide him with advanced notice of the inspection; (2) made the inspection without his presence; and (3) has unlim-

ited discretion in terms of the time, place and location of the inspections. The issue Lundeen raises requires us to determine whether particular statutes and provisions of the administrative code satisfy the constitutional requirements of the Fourth Amendment. We review such issues as questions of law without deference to the trial court. *Employers Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 737, 469 N.W.2d 203, 205 (Ct. App. 1991); *Skow v. Goodrich*, 162 Wis. 2d 448, 450, 469 N.W.2d 888, 889 (Ct. App. 1991).

The owner of commercial property does not have a right to be free from all government inspections. *Donovan v. Dewey*, 452 U.S. 594, 598 (1981). Rather, the Fourth Amendment only protects a property owner "from *unreasonable* intrusions onto his property by agents of the government." *Id.* at 599. Generally, inspections done in the absence of a warrant are considered unreasonable under the Fourth Amendment. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315-16 (1978). This general rule applies to commercial premises as well as private homes. *See v. City of Seattle*, 387 U.S. 541, 543-44 (1967).

Unlike private homes, however, warrantless inspections of commercial premises are not necessarily unreasonable. *Donovan*, 452 U.S. at 599. In *New York v. Burger*, 482 U.S. 691, 700 (1987), the Supreme Court noted that this is particularly true with respect to "commercial property employed in 'closely regulated' industries." This is so because an individual who chooses to participate in a pervasively regulated industry should be aware of the history of close government supervision. *Barlow's*, 436 U.S. at 314-15.

Even in closely regulated industries, however, a warrantless inspection will be found reasonable only if it satisfies three criteria. In *Donovan*, the Court created a three-pronged test for determining whether a warrantless inspection scheme is reasonable. *Id.* First, the inspection must relate to a regulatory scheme that furthers a substantial government interest. *Id.* at 602. Second, the inspection must be necessary to further the regulatory scheme. *Id.* at 602-03. Third, the inspection scheme, "in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Id.* at 603-04. Because we conclude that dairy farming is a pervasively regulated industry and has a long tradition of government regulation, the *Donovan* criteria are relevant to a determination of whether the warrantless search was reasonable in this case. *See Borden Co. v. McDowell*, 8 Wis. 2d 246, 262, 99 N.W.2d 146, 155 (1959) ("dairy industry is subject to regulation and has been regulated so by the legislature for the public welfare for many years."). Based on these criteria, we conclude that the warrantless inspection scheme in this case does not violate the Fourth Amendment.

Lundeen does not dispute that the dairy farm regulations further the government's substantial interest in protecting public health and safety. Further, although Lundeen does not admit the existence of the second element of the *Donovan* test, we conclude that warrantless and unannounced inspections are necessary to further the State's regulatory scheme in the dairy industry. In *United States v. Biswell*, 406 U.S. 311 (1972), the Court confronted the issue whether warrantless inspections were necessary to further the

regulatory scheme contained in the Gun Control Act of 1968. In concluding that warrantless inspections were necessary, the Court stated that "[i]f inspection is to be effective and serve as a credible deterrent, *unannounced*, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection." *Id.* at 316 (emphasis added).

The Court's reasoning in *Biswell* is equally applicable to this case. The purpose of the department's inspection procedure is to enforce the dairy farm standards contained in WIS. ADM. CODE § ATCP 60.06-60.23. One of the department's primary enforcement objectives is to ensure that dairy farms conform to code standards on a regular and continuous basis. However, requiring the department to obtain a warrant and notify the dairy farmer of its intent to perform an inspection would frustrate this objective. Such a requirement would provide dairy farmers with notice of a pending inspection and allow them to conform their premises to code standards merely for inspection. Thus, with the exception of pre-notified inspection dates, dairy farmers could ignore code standards with impunity. Under the current inspection scheme, however, the department can make unannounced inspections and thereby increase the likelihood that dairy farm operations are continuously being conducted on a continuing basis in a manner consistent with dairy farm standards and the public's health and safety. Therefore, we conclude that warrantless and unannounced inspections are necessary to further the State's interest in regulating dairy farms.

The third *Donovan* element, whether the inspection scheme provides a constitutionally adequate substitute for a warrant, is the primary subject of the parties' dispute. *Id.* at 603-04. In *Barlow's*, the Court

noted that in order for this element to be satisfied, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officer." *Id.* at 323. Lundeen relies on *Barlow's* to support his contention that the inspection scheme in this case is not a constitutionally adequate substitute for a warrant.

In *Barlow's*, the Court held that an Occupational Safety and Health Act regulation that permitted warrantless searches of any workplace at any reasonable time was not a sufficient substitute for a warrant. *Id.* at 320. In coming to this conclusion, however, the Court specifically noted that its holding was limited to the provisions of the Occupational Safety and Health Act. *Id.* at 320-21. Further, the Court stated that "the reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute. Some . . . statutes apply only to a single industry, where regulations might already be so pervasive that a[n] . . . exception to the warrant requirement could apply." *Id.* at 321. The warrantless inspection scheme at issue in this case is limited exclusively to the dairy industry, and there is no dispute that this industry has a longstanding tradition of government regulation. Therefore, we conclude that *Barlow's* is not dispositive of this case and that the warrantless inspection scheme at issue in this case provides a constitutionally adequate substitute for a warrant. *See Donovan*, 452 U.S. at 594.

In *Donovan*, the respondent argued that the warrantless inspection scheme authorized by the Mine

Safety and Health Act violated the Fourth Amendment. *Id.* In concluding that the warrantless inspection scheme provided a constitutionally adequate substitute for a warrant, the Court declared that the regulations are "sufficiently pervasive and defined that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection.' " *Id.* at 603 (citation omitted). In support of its conclusion, the Court noted that: (1) the Act requires inspection of *all* mines; (2) the Act specifically defines the frequency of inspections by requiring inspection of all surface mines at least twice annually and all underground mines at least four times annually; (3) the Act requires reinspection of mines where violations of the Act have previously been discovered; and (4) "the standards with which a mine operator is required to comply are all specifically set forth in the Act or in Title 30 of the Code of Federal Regulations." *Id.* at 603-04. Therefore, the Court concluded that the Act established "a predictable and guided federal regulatory presence[ ]" and that the Act was a sufficient substitute for a warrant. *Id.*

The warrantless inspection scheme in this case is similar to that approved in *Donovan*. Here, the warrantless inspection scheme requires all dairy farms to be inspected on a regular basis, and it specifically defines the frequency of inspections. Under the Act, Grade A dairy farms are required to be inspected at least once every six months, and Grade B dairy farms are required to be inspected at least once every two years. Further, the code requires the reinspection of any dairy farms that have previously been found in violation of code standards. Finally, the scope of the inspection is specifically defined by the standards enumerated in WIS. ADM. CODE § ATCP 60.06-60.23. Thus, like the Mine Safety and Health Act, the inspection

scheme in this case does not leave "the frequency and purpose of inspections to the unchecked discretion of Government officers . . . ." *Donovan*, 452 U.S. at 604. Rather, the code "establishes a predictable and guided . . . regulatory presence." *Id.*

Lundeen, however, argues that the inspection statutes and administrative code do not sufficiently limit the places that may be inspected. In particular, Lundeen claims that under § 93.08, STATS., the areas that may be inspected are limited only by the inspector's discretion. Thus, Lundeen argues that because portions of family farms are often devoted to residential and personal use, inspectors have unfettered discretion to search these areas. Therefore, Lundeen contends that the current inspection scheme does not provide a constitutionally adequate substitute for a warrant. We are not persuaded.

Neither the administrative code nor the statutes contain language that can be interpreted to allow inspectors to search the residential areas of dairy farms. Moreover, WIS. ADM. CODE § ATCP 60.06-60.23 specifically defines the standards which dairy farms must meet. In conducting dairy farm inspections under §§ 93.08, 93.15(2) and 97.12(1), STATS., inspectors are limited to inspecting areas that may contain violations of these standards. Accordingly, the administrative code standards delineate the places that inspectors may search. Because the administrative code standards govern operations, equipment and processes that are not typically conducted or found in residential areas, there is no merit to Lundeen's argument. Therefore, we conclude the administrative code and statutes are sufficiently specific to preclude inspectors from making warrantless inspections of residential areas of dairy farms that are unrelated to dairy operations.

Lundeen further argues that the administrative code and statutes do not provide a sufficient substitute for a warrant because they do not limit the time of day that inspections may be conducted. Not only does the administrative code define the frequency of inspections, but § 93.03, STATS., limits the time of inspections to "reasonable hours." Although the flexible nature of this standard does provide inspectors with a certain degree of discretion, it is sufficiently specific to prevent inspectors from conducting inspections at unreasonable and arbitrary hours. Therefore, we conclude that the administrative code, in conjunction with the applicable statutes, provides a constitutionally adequate substitute for a warrant.

■

Lundeen's final contention is that department inspections performed in the property owner's absence are patently unreasonable. Just as a warrant requirement would frustrate the department's effective enforcement of the code standards, so too would a requirement that the owner be present for all inspections. The purpose of the department's inspections is to determine whether dairy farm operations are consistent with code standards. Requiring the farmer to be present for the inspection would frustrate this purpose because the farmer could defeat the inspection by simply being absent from the premises. Because this consequence would impede the department's effective enforcement of the dairy farm standards, we conclude that the department must have the authority to perform inspections in the farmer's absence in order to further the state's interest in dairy farm regulation.

We recognize that the inspection limits set forth in the code and statutes do not guarantee that the department will not exceed its statutory authority to conduct

warrantless inspections. In this case, however, there is no evidence of department abuse. Rather, the evidence indicates the department is conducting reasonable inspections of a closely regulated industry. Such inspections are necessary to preserve the interest of public health and safety. We therefore conclude that there are sufficient constraints upon the discretion of the department's inspectors and that the warrantless inspections of dairy farms do not violate the Fourth Amendment.

*By the Court.*—Judgment affirmed.