STATE of Wisconsin, Plaintiff-Respondent,

v.

Richard R. YAKES, Defendant-Appellant.†

Court of Appeals

*No. 98–0470–CR. Submitted on briefs March 26, 1999.—Decided April 21, 1999.*

(Also reported in 595 N.W.2d 108.)

†Petition to review dismissed.

425

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard R. Yakes*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Snyder, P.J., Brown and Mawdsley,[1] JJ.

BROWN, J. The major question in this case is whether a commercial proprietor's claim of a privacy interest in the area surrounding the commercial building, and the garbage in particular, is subject to a more demanding test than for the possessor of residential property. We adopt the reasoning of *United States v. Hall*, 47 F.3d 1091 (11th Cir. 1995), and conclude that a commercial proprietor must show how affirmative steps were taken to bar the public from the dumpster area in order to validate a claim of an objectively reasonable expectation of privacy regarding trash in the dumpster. We also address claims that the trial court considered improper factors at sentencing and that the judge should have recused himself. We reject all the arguments.

---

[1] Circuit Judge Robert G. Mawdsley is sitting by special assignment pursuant to the Judicial Exchange Program.

Richard R. Yakes was convicted of sexual assault of a minor based on evidence taken from a business dumpster located outside of and used by his excavation company. The dumpster was owned not by his company or Yakes personally, but by a trash disposal company. Yakes leased the rural property on which he had an office, a barn and a mobile home. He lived in the mobile home and ran his business, Lakes Area Excavating Co., from the office. After the police received an anonymous letter alerting them to the fact that Yakes suffered from a serious drug addiction problem, an officer went to the property and removed trash from the dumpster. The trash contained drug paraphernalia and residue that tested positive for marijuana. It also contained a letter to "Rich" from a fourteen-year-old girl assuring him that she would not tell anyone about their sexual relationship. Based on this letter and subsequent interviews with the girl, Yakes was charged with having sexual intercourse with a person under the age of sixteen. He was convicted after a jury trial and sentenced to five years in prison followed by ten years probation. Further facts will be related as necessary.

Yakes' first challenge to his conviction is that evidence obtained from the dumpster should have been suppressed because the police violated his Fourth Amendment right to be free from unreasonable searches and seizures when they went through his trash. He claims that the dumpster from which the trash was taken was within his residential curtilage and thus protected from unwarranted governmental intrusion. He also contends that even if the dumpster was within the commercial rather than the residential curtilage, the search was still unreasonable.

██

Our standard of review is mixed. We review the trial court's findings of fact under the clearly erroneous standard and will uphold them as long as they are supported by the record. *See* § 805.17(2), STATS.; *Gerth v. Gerth*, 159 Wis. 2d 678, 682, 465 N.W.2d 507, 509 (Ct. App. 1990). If we accept the trial court's factual findings, we review de novo the constitutional significance of those facts. *See State v. Hahn*, 132 Wis. 2d 351, 357, 392 N.W.2d 464, 466 (Ct. App. 1986).

██

Whether a warrantless search and seizure of garbage is constitutionally reasonable depends on whether the defendant had a legitimate expectation of privacy in the garbage. *See California v. Greenwood*, 486 U.S. 35, 39 (1988).[2] There are two prongs to this determination. *See State v. Rewolinski*, 159 Wis. 2d 1, 13, 464 N.W.2d 401, 405 (1990). The first question is whether the individual challenging the search had a subjective expectation of privacy. *See id.* The second question is whether that expectation of privacy is one which society is prepared to recognize as legitimate. *See id.* In other words, the defendant must show that he or she had a subjective expectation of privacy that was objectively reasonable. *See Greenwood*, 486 U.S. at 39–40.[3]

---

[2] Whether the claim is brought to us cloaked in federal or state constitutional terms is of no moment. Wisconsin courts interpret the search and seizure provisions of the state and federal constitutions identically. *See State v. Rewolinski*, 159 Wis. 2d 1, 12 n.5, 464 N.W.2d 401, 405 (1990).

[3] We note that this two-pronged test presents both factual and legal questions. Whether an individual had a subjective expectation of privacy is a question of fact, while whether that expectation was objectively reasonable is a question of law. *See*

While both residential and commercial property are protected from unreasonable searches and seizures by the Fourth Amendment, *see Lundeen v. Department of Agric., Trade & Consumer Protection*, 189 Wis. 2d 255, 261, 525 N.W.2d 758, 761 (Ct. App. 1994), the factors probative of an objectively reasonable privacy expectation differ depending on the nature of the property. *See Hall*, 47 F.3d at 1095. In *Hall*, a customs agent obtained a search warrant based on shredded paper he had taken out of a business' dumpster. *See id.* at 1093. In order to reach the dumpster, the agent had to drive forty yards on a private road on the business' property. *See id.* Hall, the business' chairman, argued that the business' expectation of privacy regarding shredded papers in the dumpster was objectively reasonable because the dumpster was within the "commercial curtilage" and could only be accessed by private road. *See id.* at 1095. The Eleventh Circuit Court of Appeals noted that the United States Supreme Court had never "squarely addressed the applicability of the common law concept of curtilage to commercial property." *Id.* at 1097. The court thus declined to reach its decision based on case law discussing the extent of a residential curtilage. Rather, it held that "the owner of commercial property has a reasonable expectation of privacy in those areas immediately surrounding the property only if affirmative steps have been taken to exclude the public." *Id.* at 1096. This, the court held, Hall had not done. There were no "objective signs of restricted access such as signs, barricades and

*United States v. McBean*, 861 F.2d 1570, 1573 & n.7 (11th Cir. 1988). We need not address the first prong separately, as we conclude that whatever expectation of privacy Yakes in fact had was not objectively reasonable.

the like." *Id.* The court rejected Hall's argument that the government, in order to justify its intrusion, had to show that the general public had been invited onto the premises. *See id.*

> We do not believe this is the appropriate inquiry when an expectation of privacy is asserted in the area immediately surrounding a commercial building. Rather, the Supreme Court has consistently stated that a commercial proprietor has a reasonable expectation of privacy only in those areas where affirmative steps have been taken to exclude the public.

*Id.* Thus, Hall's failure to take affirmative steps to show that the garbage area was barred from public access belied his claim of an objectively reasonable expectation of privacy.

Before applying the reasoning of *Hall* to Yakes' case, we must address a lingering factual dispute. Yakes claims that the dumpster was located within the curtilage of his residence. The trial court found that the dumpster was on Yakes' business premises. Whether the area in which the dumpster was located was residential or commercial in nature is a question of fact. We uphold the trial court's findings of fact unless clearly erroneous and unsupported by the record. *See* § 805.17(2), STATS.; *Gerth,* 159 Wis. 2d at 682, 465 N.W.2d at 509. Here, there was ample evidence to support the trial court's finding. The dumpster was located right next to the business office, in the area where Yakes stored his work vehicles. It was much closer to the business portions of his property than to his residence. Yakes testified that he had chosen to put the dumpster near the office to make it easier to throw away office trash. The trial court's finding that the area

in which the dumpster was placed was commercial rather than residential is thus supported by the record and will not be disturbed.

We now look to Yakes' Fourth Amendment claim in light of the reasoning set forth in *Hall*. We agree with the reasoning of *Hall*, adopt its privatization test, and conclude that Yakes did not have an objectively reasonable expectation of privacy regarding the trash in his dumpster. Although Yakes' yard, which contained both his residence and business, was fenced, there was no gate on the fence that could be closed to restrict access. There was a large gravel parking area. Customers would enter the area to pay bills and pick up bids. Yakes also allowed others onto the property to use his barn and was not sure how many people had access to the barn. A disposal company regularly entered the area to empty the dumpster. Furthermore, Yakes knew that the police routinely patrolled the area as part of their crime prevention route. On one occasion, an officer entered the shop to check for burglars after noticing that the door was open. At another time, an officer notified Yakes that the barn door was open. Yakes never complained about the police entering his property, nor did he take steps to privatize the area. Given all these facts, we conclude that Yakes did not have an objectively reasonable expectation of privacy with respect to the dumpster outside his office. Thus, the court was correct to deny Yakes' motion to suppress.

We turn now to Yakes' claim that the trial court erroneously exercised its discretion by considering improper factors at sentencing. Specifically, Yakes alleges that the court based its sentence upon the facts

that Yakes was "committing adultery . . . not paying child support . . . [and] was financially bankrupt."

The trial court enjoys broad discretion when fashioning a sentence. *See State v. Macemon*, 113 Wis. 2d 662, 667, 335 N.W.2d 402, 405 (1983). Upon review, we will not disturb a sentence unless the court has erroneously exercised its discretion. *See McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). An erroneous exercise of discretion occurs if the trial court bases its sentence on irrelevant or improper factors. *See id.* The primary factors the court should consider are the gravity of the offense, the defendant's character and protection of the public. *See State v. Iglesias*, 185 Wis. 2d 117, 128, 517 N.W.2d 175, 178 (1994). A variety of factors are appropriate components of these three, including, inter alia, the aggravated nature of the crime, any history of undesirable behavior, the defendant's social traits and employment record, and the rights of the public. *See id.*

Here, the trial court considered appropriate factors when sentencing Yakes. It noted that the "crime by its very nature is vicious and aggravated" and one against which society has chosen to make an absolute prohibition, regardless of who initiates the sexual relationship. The court considered Yakes' apparent lack of remorse up until the eleventh hour and his unwillingness to cooperate with law enforcement by giving information on his drug suppliers. In his favor, the court noted that he did not have a prior criminal record and that there was no force involved in the assaults. Ultimately, the court felt that probation would depreciate the seriousness of the offense.

██

In reaching its decision, the court did also consider the factors upon which Yakes bases his challenge; but these were all appropriate factors relating to Yakes' character and personal history. First, Yakes' child support history shows his behavior patterns and indicates his level of personal responsibility. Also, when addressing Yakes' payment of child support, the court noted that while Yakes "has often been in arrears . . . [he] has also paid substantial amounts, so that's partly for him but partly against." Second, the court's consideration of Yakes' marital status was to shed light on his character: here was a man who was still legally married to one woman and already had a steady sexual relationship with another, yet still felt the need to take advantage of a fourteen-year-old girl's crush on him. The court mentioned the word "adultery" only to point out that it is still a criminal offense. This was done in response to defense counsel's attempt to minimize the undesirability of Yakes' pursuit of multiple sexual relationships while still married. Furthermore, the court found it telling that Yakes had, at one point, used loneliness as an excuse for his actions, while in reality he had a serious girlfriend all the while. The existence of the girlfriend also cut against Yakes, the court noted, because, due to the assaults, he was putting both the victim and the girlfriend at increased risk of catching a sexually transmitted disease. Finally, Yakes' financial status was properly considered as part of his employment history and record of drug use. The court noted that Yakes himself had admitted that his business "probably" failed due to his drug use. All of the factors that Yakes claims were improper were appropriate for the court to consider. There was no erroneous exercise of discretion.

Finally, Yakes claims that the trial judge should have recused himself because "an associate of [the judge] was owed, by the appellant . . . $50,000 [and] a major campaign contributor that gave to the [judge] was also the appellant's business competitor." Yakes did not raise either issue before the trial court. The trial court has had no opportunity to respond to these claims. We deem these two claims to have been waived and will not address them. *See State v. Rogers*, 196 Wis. 2d 817, 826, 539 N.W.2d 897, 900 (Ct. App. 1995).

*By the Court.*—Judgment affirmed.