SHARP, W., J.
Ratcliff appeals from an order withholding adjudication of guilt and placing him on two years probation for two counts of dealing in stolen property.[1] After the trial court denied Ratcliffs motion to suppress *1100 evidence which was dispositive of the case, Ratcliff reserved his right to appeal and entered guilty pleas to the charges. We have jurisdiction,[2] and affirm the trial court’s denial of the motion to suppress.
The facts in this case were not in material dispute concerning the circumstances which gave rise to the police officers’ search of Ratcliffs business premises. A tractor with Ryder Truck markings was discovered abandoned at a truck stop in Lake Panasoffkee. Lieutenant Evans investigated and was able to learn that the tractor together with a trailer had been stolen from Ryder. He called a commercial towing company to move the tractor and a driver named Siminotti responded.
Siminotti recognized the tractor as one he had towed less than three weeks earlier. He told Lieutenant Evans that he towed the tractor out of deep sand behind a business in Lake Panasoffkee, named the Bargain Box or Bargain Business. At the time, there was also a trailer marked as Ryder’s nearby. He maneuvered the trailer onto a concrete slab behind the store.
Siminotti accompanied Evans to the Bargain Box (Ratcliffs store). It was after business hours and the store was closed. Evans drove his police car onto a gravel driveway to the immediate north of the store, and turned right behind the business premises. From the highway they had been able to see a Ryder trailer parked behind the building, but from that distance they could not identify it as the one reported stolen by Ryder. After parking the patrol car behind the store, Evans was able to identify the trailer as the one reported stolen.
The defense argued at the suppression hearing that the store was commercial property entitled to Fourth Amendment protection as to its curtilage, so that a warrantless entry onto the curtilage should require the suppression of any evidence produced by the entry as “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The state argued that commercial curtilages had far less Fourth Amendment protection than homes or residences, if any,[3] and that in this case, it was entitled to none because the proprietor, Ratcliff, had done almost nothing to try to establish an area of privacy behind his business.
The testimony of witnesses at the suppression hearing, as well as an aerial photograph of the premises, established that there were no fences, barricades, gates, “no trespassing” signs or the like, surrounding the business or blocking the driveway which led to the back of the store. Indeed, it appeared that residences some distance behind the business also used the driveway for access to the highway. Ratcliff had placed a white panel truck as a partial barricade to accessing the rear part of his store area, but it was not sufficient to keep two or three police cars from pulling into the drive and accessing the rear of the store. The police officers did not enter the store, itself, at that time.
Lieutenant Evans also testified that for the past thirteen years, he and deputies working under his supervision regularly patrolled behind the businesses located in that area, including the Bargain Box. He did not obtain Ratcliffs consent or permission to do so. Ratcliff denied he had agreed with the sheriffs office that it could patrol behind his store premises.
The trial court denied the motion to suppress on the ground that Ratcliff “impliedly consented to the regular patrol, and therefore had no reasonable expecta *1101 tion of privacy.” Although the court’s finding of implied consent is questionable based on the evidence presented,[4] we think its ruling can be upheld because the undisputed facts and circumstances concerning the store premises conclusively show that the curtilage or area outside of the store was entitled to no Fourth Amendment protection.
The United States Supreme Court has yet to specifically address whether a commercial business is entitled to Fourth Amendment protection against warrant-less searches, although it has indicated that such protection is far less than that enjoyed by homes and residences.[5] In Dow Chemical Co. v. United States, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986), the Court explained that a commercial business has much less expectation of privacy in its curtilage than a residence because commercial activities are not associated with the “intimate activities associated with family privacy and the home.” 476 U.S. at 236, 106 S.Ct. 1819. In that case, the court approved aerial photography over a large industrial complex of buildings. But it did not address whether the result would have been the same, if the search had been conducted on foot, past the elaborate perimeter security established by Dow.
In United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Court approved a visual search of a barn by police officers standing outside the barn as not requiring a warrant. The officers had crossed fences to reach the barn, and the Court found that it was not within the curtilage area of a home nearby. It classified the barn as commercial property, having no protectable curtilage. The Court stressed that the owner had done little to protect the barn from observation by persons standing in “open fields,” such as putting up barricades to having it viewed by passers-by.
Those cases which have recognized a Fourth Amendment protection against warrantless searches of a business curti-lage, all involved circumstances in which the owner has put up fences, barred viewing and public access, gated and locked access drives, put up no trespassing signs and the like (i.e., “private property,” “employees only,” “wholesale only,” “not open to public,” “entry by invitation only,” etc.). See, e.g., United States v. Seidel, 794 F.Supp. 1098 (S.D.Fla.1992); Pearl Meadows Mushroom Farm, Inc. v. Nelson, 723 F.Supp. 432 (N.D.Cal.1989); Johnson v. Commonwealth, 26 Va.App. 674, 496 S.E.2d 143 (1998).
The relevant questions to ask are: Did the defendant demonstrate a subjective manifestation of claimed privacy in the area behind the business, and if so, is it one society is prepared to recognize as reasonable? See United States v. McBean, 861 F.2d 1570, 1573 (11th Cir.1988). This is a legal determination, which requires no deference on review, provided the facts and circumstances are not in dispute. McBean, 861 F.2d at 1573, n. 7.
Putting up fences, and affirmatively taking express steps to exclude the public or other persons from using the area, seeing into it, or gaining access to the area claimed as business curtilage, are ways to establish such a subjective manifestation. See State v. Yakes, 226 Wis.2d 425, 595 N.W.2d 108 (Ct.App.), rev. dismissed, 228 Wis.2d 177, 602 N.W.2d 762 (1999); People v. Janis, 139 Ill.2d 300, 152 Ill.Dec. 100, 565 N.E.2d 633 (1990). In order to pre *1102 serve or establish a Fourth Amendment protection in the area surrounding a commercial business, the proprietor must take the added precaution of not leaving objects in plain view of those outside the area and, in addition, must affirmatively bar the public from the area. United States v. Hall.
In this case, Ratcliff made no effort to exclude access by the public or others to the area behind his store. The store was a retail establishment and the general public was welcome to drive to the front of his premises. Access to the rear was through a drive which had neither gates, fences nor “no trespassing” signs. The rear of the store was also visible from the public highway, ergo, the off-loading of stolen goods from a stolen trailer could be seen. Further, the drive leading to the rear of the store was apparently used by persons other than Ratcliff and his employees, including the police, who regularly patrolled the area. There is simply no objective or subjective manifestation that Ratcliff asserted a right to privacy in the area behind his store and thus a warrantless search did not violate his Fourth Amendment rights.
AFFIRMED.
PETERSON and PALMER, JJ., concur.

. § 812.019(1), Fla. Stat.

. Fla. R.App. P. 9.140(b)(l)B.

. United States v. Pace, 955 F.2d 270 (5th Cir.1992).

. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Iaccarino, 767 So.2d 470 (Fla. 2d DCA 2000).

. United States v. Hall, 47 F.3d 1091 (11th Cir.), cert. denied, 516 U.S. 816, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995)