[No. G039305. Fourth Dist., Div. Three. Sept. 29, 2008.]

THE PEOPLE, Plaintiff and Appellant, v.
ALMA LILIA MUNOZ et al., Defendants and Respondents.

## Counsel

Tony Rackauckas, District Attorney, and Raymond S. Armstrong, Deputy District Attorney, for Plaintiff and Appellant.

Deborah A. Kwast, Public Defender, Thomas J. Havlena, Assistant Public Defender, Kevin J. Phillips and Scott Van Camp, Deputy Public Defenders, for Defendant and Respondent Alma Lilia Munoz.

Gary V. Crooks, under appointment by the Court of Appeal, for Defendant and Respondent Gilbert Abraham Prado.

## Opinion

**BEDSWORTH, J.**—The Orange County District Attorney appeals from an order suppressing evidence he intended to rely upon in the prosecution of Alma Lilia Munoz and Gilbert Prado. The evidence was uncovered during the search of a motel room occupied by Munoz and Prado, after police officers made a warrantless entry into the room without obtaining consent from either Munoz or Prado. The prosecutor acknowledges there were no exigent circumstances supporting the warrantless entry, and argues only that Munoz and Prado lacked any expectation of privacy in the room because one of the $20 bills Munoz had used to pay the day's rental was apparently counterfeit.

■ We affirm the order. On appeal, we are required to construe the evidence in the light most favorable to the trial court's decision, and to draw all inferences in support of it. Thus, in the absence of conclusive evidence demonstrating Munoz was aware that one of the bills she used to secure an additional day's lodging was counterfeit, and thus that she intended to defraud the motel, we must presume she did not. A motel occupant who unknowingly pays for her lodging with counterfeit money, and without any intention to defraud, does not lose her reasonable expectation of privacy in the room. The order is affirmed.

### FACTS

Munoz and Prado were each charged with one count relating to their alleged possession of counterfeit currency (Pen. Code, § 476), and three counts relating to their alleged possession of methamphetamine and related paraphernalia (Health & Saf. Code, §§ 11377, 11366.8, subd. (a), 11364).

Both Munoz and Prado moved to suppress all the evidence found in the motel room they were occupying at the time of their arrest, on the basis that

police officers' entry *into the room without permission had violated their* reasonable expectation of privacy in contravention of the Fourth Amendment of the United States Constitution.

On August 10, 2007, the court held a hearing on the motions to suppress, and the prosecutor offered the following evidence: Garden Grove Police Officer Greg Gallegos stated that on the afternoon of April 19, 2007, he was dispatched to the Morada Motel to "investigate a possible counterfeit bill that had been passed earlier in the day." When Gallegos arrived at the motel, the manager, Fermin Leal, told him that Munoz, the named occupant of room 142, had been at the motel for approximately six days, and it appeared a man *was occupying the room with her.* There was no specified termination date for Munoz's occupancy of the room, and Leal had not previously experienced any problems with her.

Leal told Gallegos he had gone to room 142 earlier in the day to collect the day's rent from Munoz, and she paid him with two $20 bills and one $5 bill. After Leal had walked away from the room, he determined that one of the $20 bills given to him by Munoz appeared to be counterfeit, and he then contacted the police to investigate.

Leal showed Gallegos the suspicious $20 bill, which Gallegos acknowledged did not *look* obviously counterfeit. It was only when he handled the bill that Gallegos could discern the paper used to make it was "less dense" than a real $20 bill, and concluded it was likely counterfeit. Gallegos then called for backup so he could "make contact with room 142."

After the second police officer, Paul Tessier, arrived, the two made their way to room 142 and knocked on the door, announcing "Garden Grove Police." They could hear "water running and . . . some talking" from inside the room, but nobody answered the knock. They continued knocking and announcing for approximately two minutes. After that, the officers entered the room using a key that Leal "gave" them.[1] (The record does not indicate whether Leal turned over the key at the officers' request, or volunteered it to them.)

When the officers entered the room, nobody was visible, and they determined the voices and running water sounds were coming from the shower. The officers went to the bathroom door, which was "cracked open a couple of inches," and again knocked and announced themselves as "Garden Grove Police." Munoz "poked her head out" of the slightly open bathroom door, and

---

[1] The prosecution disclaimed any assertion the officers' entry into the room was justified by exigent circumstances.

told the officers she was in the shower. Gallegos asked her to come out into the room and she did so after taking a few minutes to get dressed.

After Munoz came out of the bathroom, the officers informed her they were there to investigate the counterfeit $20 bill. She told them she knew nothing about it, and had gotten that day's rent money from her boyfriend, Prado, who was still in the shower. Prado came out of the bathroom a couple of minutes later.

The officers again stated they were there to investigate a counterfeit $20 bill that Munoz had given to the motel manager. They asked for consent to search the room. Both Munoz and Prado told them they could.

In the course of the search, the officers asked Prado if there was any other cash in the room. He replied in the affirmative, retrieved a pair of sweatpants off of the bathroom floor, and then "pulled a wad of cash out of one of the pockets." At Tessier's request, Prado handed him the cash for inspection. The cash, which included both $10 and $20 bills, totaled $210, but three of the $20 bills appeared to be counterfeit. All of the suspect $20 bills, including the original one used to pay the rent, had the same serial number.

The officers' search of the room also uncovered a "crystal-like substance," which later testing revealed to be methamphetamine, along with glass pipes presumably used for smoking methamphetamine.

At the close of the prosecutor's evidence, the court expressed its view that the search and seizure question turned on whether the officers were justified in their initial decision to enter the room: "If the officers are justified in going through the door, I think all the other dominos fall. The question is whether they can get through the door . . . ." The court then invited the parties to file supplemental briefing which focused on that issue. The parties agreed they would like to do so, and the court then continued the hearing to give the parties a chance to file those briefs.

When the hearing reconvened approximately a month later, the prosecutor stipulated there was no evidence the motel manager had taken steps to evict Munoz and Prado from the room at the time the officers entered it, and he had not requested the officers' assistance in effecting such an eviction. The parties then agreed that all the evidence was before the court, and argued their respective positions.

Munoz and Prado argued that the occupant of a motel room does not lose his or her expectation of privacy unless either the rental period had expired

by its own terms, or the innkeeper has taken steps to lawfully evict the occupant. They asserted neither of those circumstances was present in this case.

The prosecutor argued that because Munoz's payment of the current day's rent had included a counterfeit bill, her rental period had not effectively been extended, and must consequently be treated as "expired." He also relied on *People v. Satz* (1998) 61 Cal.App.4th 322 [71 Cal.Rptr.2d 433], for the proposition that an occupant who has defrauded the innkeeper into providing a room has no legal right to be in the room, and thus cannot claim any legitimate expectation of privacy within it.

After considering the parties' arguments, the court ruled, with frank misgivings, that the evidence must be suppressed. The court concluded it was bound by case law holding that absent some effort by the motel to lawfully evict them, Munoz and Prado retained a reasonable expectation of privacy in the room. The court noted that it disagreed with *U.S. v. Bautista* (9th Cir. 2004) 362 F.3d 584, which appeared to focus on the eviction element as the single dispositive factor in assessing the defendant's expectation of privacy, but acknowledged that the innkeeper's attempt to evict also played a part in other cases, including *People v. Satz, supra,* 61 Cal.App.4th 322, the case primarily relied upon by the prosecutor.

## DISCUSSION

The test to be applied in assessing a defendant's claim that she has a reasonable expectation of privacy contains both subjective and objective components, thus, " 'the defendant must show that he or she had a subjective expectation of privacy that was objectively reasonable.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3], quoting *State v. Yakes* (1999) 226 Wis.2d 425, 430 [595 N.W.2d 108].) The Fourth Amendment protects only a reasonable expectation of privacy, which "by definition means more than a subjective expectation of not being discovered." (*Rakas v. Illinois* (1978) 439 U.S. 128, 143, fn. 12 [58 L.Ed.2d 387, 99 S.Ct. 421].) "[S]ubjective expectations of privacy that society is not prepared to recognize as legitimate have no [Fourth Amendment] protection." (*People v. Reyes* (1998) 19 Cal.4th 743, 751 [80 Cal.Rptr.2d 734, 968 P.2d 445].) Thus, "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate' . . . his expectation is not 'one that society is prepared to recognize as "reasonable." ' " (*Rakas v. Illinois, supra,* 439 U.S. at p. 143, fn. 12.)

In this case, the prosecution relies almost exclusively on *People v. Satz, supra,* 61 Cal.App.4th 322, to support its claim the trial court erred in

suppressing the evidence. In *Satz*, the court explained the existence of a reasonable expectation of privacy is based upon several factors. Quoting from *People v. Thompson* (1996) 43 Cal.App.4th 1265, 1269–1270 [51 Cal.Rptr.2d 334], the court recited that " '[t]he pertinent facts to consider include whether the defendant has a property or possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that the place would remain free from governmental invasion; whether he took normal precautions to maintain his privacy; and whether he was legitimately on the premises. [Citations.]' " (*Satz*, at p. 325.)

The *Satz* court then reasoned that although the defendant in that case did have the ability to close and lock the door, a factor to be weighed in her favor, the "crucial" factor militating against the recognition of her legitimate expectation of privacy was the fact she had *intentionally* "defrauded an innkeeper" by using a stolen credit card number to obtain her room, in violation of Penal Code section 537, subdivision (a). As the court explained, "[i]t is a public offense for a person to obtain '. . . accommodations at a hotel, inn, . . . [or] motel, . . . without paying therefor, with intent to defraud the proprietor or manager thereof, or who obtains credit at an hotel, inn, . . . [or] motel . . . by the use of any false pretense . . . .' (§ 537, subd. (a); *People v. Lewis* (1980) 109 Cal.App.3d 599, 608–609 [167 Cal.Rptr. 326].) Her continued presence on the premises was a trespass." (*People v. Satz, supra*, 61 Cal.App.4th at p. 326.)

In this case, by contrast, we cannot infer that Munoz had any similar "intent to defraud" when she used a counterfeit bill as part of her payment for the night's lodging. The trial court made no such finding, and we cannot infer it absent undisputed evidence establishing it as true. A person using a stolen credit card, as did Satz, *knows* she is defrauding the innkeeper—she need only look at the card to see it is not in her name. A person passing a counterfeit bill, however, may well be completely unaware that such is the case. This is, therefore, a very different case from *Satz*.

In reviewing a trial court's ruling on a motion to suppress evidence, "an appellate court defers to the trial court's express or implied findings of fact that are supported by substantial evidence . . . . (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; *People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) '[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court.' (*People v. Lawler, supra*, at p. 160.) If factual findings are unclear, the appellate court must infer 'a finding of fact favorable to the prevailing party

on each ground or theory underlying the motion.' (*People v. Manning* (1973) 33 Cal.App.3d 586, 601–602 [109 Cal.Rptr. 531].)" (*People v. Middleton* (2005) 131 Cal.App.4th 732, 737–738 [31 Cal.Rptr.3d 813].)

While it is clear the trial court in this case believed the suspect $20 bill was in fact counterfeit, there is no evidence, let alone any finding, that Munoz herself actually knew that. The only evidence in the record is that Munoz had obtained the cash to pay for the day's rent from Prado, and that one of the three bills used was apparently counterfeit. However, even Officer Gallegos acknowledged the counterfeit nature of that bill was not immediately obvious. He indicated it looked real, but that the paper did not have the same dense feel of real currency. There is no evidence Munoz actually handled the bill (which may have been sandwiched between the two others) let alone that she did so for any significant period of time. And of course, there was no evidence that either Munoz or Prado was actively engaged in the creation of this counterfeit currency. Based upon the record in this case, then, we cannot infer that Munoz actually knew she was passing counterfeit currency as part of her payment to the motel manager, and thus we cannot conclude she intended to defraud the motel when she made that payment.

*Satz* is also distinguishable from the instant case because in *Satz*, the innkeeper had specifically taken steps to evict the defendant from the room, after learning of the stolen credit card, and had called the police for assistance in effectuating that eviction. Thus, the police officer merely accompanied the manager to the defendant's room, and stood, outside the room, as she opened the door with her passkey. After the manager had entered the room, "[t]he officer, *lawfully standing in a place she had a right to be*, asked if she could 'check out the room.' Appellant answered, 'That would be fine. I didn't do anything wrong.' The officer asked appellant if she 'could look through her things.' Appellant responded: 'Sure, you can check anything.' " (*People v. Satz, supra*, 61 Cal.App.4th at p. 324, italics added.) The court in *Satz* reasoned these circumstances did not add up to a violation of the defendant's reasonable expectation of privacy for two reasons. First, the court explained that "[a]n innkeeper who reasonably believes that he or she has been defrauded. may enter a hotel room and ask the occupants to leave. (E.g., *People v. Minervini* (1971) 20 Cal.App.3d 832, 840–841 [98 Cal.Rptr. 107].) Here, the innkeeper properly called upon the police to assist in the eviction. The mere presence of the police officer at the door after the innkeeper entered did not violate the Fourth Amendment and its principles." (*Id.* at p. 326.)

Second, the court explained because the police officer remained outside the door until the defendant gave express permission for her to enter and search, the defendant waived any legitimate expectation of privacy she might have had: "[E]ven if appellant had a reasonable expectation of privacy, it was

waived when she voluntarily consented to the search of the room and her purse." (*People v. Satz, supra*, 61 Cal.App.4th at p. 326.)

In this case, by contrast, the motel manager never made any attempt to evict Munoz from the room, did not ask the police to assist in such an effort, and was not even present when the officers, acting solely for their own purpose of investigating a possible crime, decided to enter the motel room without obtaining permission from the occupants.

Finally, we must also reject the prosecutor's suggestion the rental term for the room occupied by Munoz and Prado was not lawfully extended—and must consequently be treated as having effectively "expired" at the time of the police officers' entry—because Munoz's payment for that day's rent had included a counterfeit bill.

The terms of a room rental are a matter of contract between the innkeeper and occupant. In this case, the motel manager accepted Munoz's payment for the additional day, and thus extended her rental for that period. Once the manager discovered that Munoz's payment was not entirely comprised of legal tender, the motel had the right to rescind the agreement for an extra day based upon a failure of consideration. (Civ. Code, § 1689.)

However, until such a rescission takes place; i.e., the innkeeper "takes steps to effect a lawful eviction," the agreement struck between the motel and the occupant—in this case the agreement to extend Munoz's occupancy of room 142 for an additional day, continues in effect. In fact, as several courts have concluded, a reasonable expectation of privacy may survive even the expiration of the rental period specifically agreed upon, where there is evidence the owner has implicitly agreed to allow it. It is, after all, an *expectation* of privacy we are talking about here, and once the motel has accepted the money, the occupant reasonably *expects* to enjoy the continued benefits of the contract. (See *U.S. v. Henderson* (9th Cir. 2000) 241 F.3d 638, in which the Ninth Circuit held the defendant retained a reasonable expectation of privacy in a rental car, several days after the rental period had expired, despite the fact the rental company had the "legal right" to repossess it. The company could also implicitly choose to acquiesce in the extension of the rental term; see also *U.S. v. Kitchens* (4th Cir. 1997) 114 F.3d 29, and *United States v. Owens* (10th Cir. 1986) 782 F.2d 146, recognizing that a hotel occupant may retain a reasonable expectation of privacy even after the rental period expires where there is a preexisting relationship between hotel and guest, or the hotel has lax enforcement of its checkout time.)

Stated another way, the mere fact the motel in this case may have *had grounds* to terminate the existing rental period negotiated with Munoz, based

upon her inclusion of counterfeit money in her payment for their room, was not the same thing as the motel actually choosing to do so. Even knowing that she had used a counterfeit bill for part of her payment, the motel could also have chosen to let her stay and "make other payment arrangements." (*U.S. v. Bautista, supra*, 362 F.3d 584.)

In the circumstances of this case, and indulging all inferences in support of the trial court's decision, we conclude the rental term for the motel room occupied by Munoz and Prado had not expired, and they retained a reasonable expectation of privacy therein at the time the Garden Grove police officers entered without permission.

The order is affirmed.

Sills, P. J., and Ikola, J., concurred.