PER CURIAM.
 

 Fidel Fernandez appeals a withheld adjudication and sentence of probation for possession of cannabis with intent to sell. The defendant maintains that the trial court erred in denying his motion to suppress the . evidence and his statements based on the unauthorized entry onto his residential property by law enforcement officers. Because we find that the entry was unlawful, we reverse the order denying the suppression motion.
 

 The police narcotics bureau received an anonymous tip that a home in southwest Miami-Dade County was being used as a marijuana hydroponics lab. The police decided to investigate the house. When the police arrived at the house, they set up surveillance around the perimeter of the property.
 

 The one-acre lot was completely enclosed by tall fences, and it was hidden from view by a tall hedge. The house was set back into the lot and not visible from the street. Access to each end of the u-shaped driveway was obstructed by a closed metal gate that could be opened by a remote control device in the defendant’s vehicle near the house and inside the fence. The mailbox was outside the fenced perimeter. As the law enforcement officers arrived, there was no opening into the property.
 

 At some point during the surveillance, an officer with a view of the residence notified others that the defendant had left the house and was getting into the car in the driveway. When the defendant used the remote control device inside the car to open the driveway gate to leave, Sergeant Falcon slipped inside the property through the gate as it opened. Sergeant Falcon waived to Detective Murillo to enter the property. Murillo drove his car into the driveway, “a couple of feet” from the de
 
 *883
 
 fendant’s ear, blocking the defendant’s exit through the gate.
 

 Sergeant Falcon walked up to the defendant’s car and told the defendant that he needed to talk to him. Detective Murillo also walked up to the defendant’s car and two other officers walked through the open gate into the property. The defendant got out of his ear and Sergeant Falcon asked the defendant for consent to search the house. Two officers and the defendant walked back toward the house. Once on the porch, the defendant sat down and asked the Sergeant for clarification of what he was asking. The Sergeant said they just wanted consent. The defendant asked for a few moments to collect his thoughts. The defendant refused to sign a consent form but he opened the door for the police. Once inside, the police found 144 marijuana plants.
 

 The state charged the defendant with possession of cannabis with intent to sell. The defendant filed a motion to suppress the evidence, arguing that the police had trespassed onto the defendant’s property, that the police had no warrant, there was no valid consent, and there were no exigent circumstances to justify the entry. The defense asserted that this illegal entry tainted the remainder of the encounter, requiring suppression of the evidence seized in the house and all of the defendant’s subsequent statements. The trial court denied the suppression motion. The defendant pled to the charge, reserving his right to appeal this denial.
 

 We reverse the denial of the suppression motion. When Sergeant Falcon slipped into the gate that serendipitously opened while the police were surveilling the property, he committed a trespass onto the defendant’s property. The consent arguably obtained from the defendant after the trespass did not cure the taint of the illegality.
 

 Unlawful Entry
 

 “One seeking the exclusion of evidence as the fruit of an unreasonable search must demonstrate, first, that the government perpetrated the intrusion that led to the discovery of incriminating information.”
 
 State v. Butler,
 
 1 So.3d 242, 246 (Fla. 1st DCA 2008). In this case, it is undisputed that the police committed the intrusion in question. The next inquiry is whether the defendant had “a ‘justifiable,’ a ‘reasonable,’ or a ‘legitimate expectation of privacy’ that has been invaded by government action.”
 
 United States v. Dunn,
 
 480 U.S. 294, 316, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (quoting
 
 Smith v. Maryland,
 
 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).
 

 A yard adjacent to a residential dwelling, particularly one blocked from view from the street, “is clothed with a reasonable expectation of privacy from unreasonable governmental intrusion.”
 
 Potts v. Johnson,
 
 654 So.2d 596, 599 (Fla. 3d DCA 1995) (citing
 
 Morsman v. State,
 
 360 So.2d 137, 138 (Fla. 2d DCA 1978)). “A police officer may be held liable in trespass for entering upon the property of another-”
 
 Potts,
 
 (citing
 
 Guin v. City of Riviera Beach,
 
 388 So.2d 604 (Fla. 4th DCA 1980)). There is unrebutted evidence that this defendant had a subjective expectation of privacy in the curtilage of his home. “Putting up fences, and affirmatively taking express steps to exclude the public or other persons from using the area, seeing into it, or gaining access to the area ... are ways to establish such a subjective manifestation.”
 
 Ratcliff v. State,
 
 783 So.2d 1099, 1101 (Fla. 5th DCA 2001);
 
 Ruiz v. State,
 
 743 So.2d 581 (Fla. 4th DCA 1999). This defendant had taken great measures to ensure his privacy; the house was surrounded by barriers obstructing a view of the property. This enclosed area constitutes curtilage that falls under the
 
 *884
 
 same constitutional protections as the residence it surrounds.
 
 [1]
 

 Section 810.08(1), Florida Statutes (2008), specifies that an unauthorized entry into a “structure” is a trespass and a second-degree misdemeanor. Section 810.011(1), Florida Statutes (2008), defines “structure” to mean “a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof.”
 
 Webster’s Third New International Dictionary
 
 defines “curti-lage” as “a yard, courtyard, or other piece of ground included within a fence surrounding a dwelling house.”
 
 [2]
 

 The state argues, however, that Sergeant Falcon was free to enter the premises when the gate opened. That argument is not persuasive because the momentary opening of the gate for the defendant to leave was not an open invitation to the public, or by extension to the police, to enter. Certainly, a policeman may enter the curtilage surrounding a home in the same way as a salesman or visitor could.
 
 Potts,
 
 654 So.2d at 599 (citing
 
 State v. Morsman,
 
 394 So.2d 408, 409 (Fla.1981)). But those are not the facts here. No salesman or visitor could have entered the enclosed curtilage during the momentary opening. The momentary opening of the gate for the express purpose of leaving did not alter the
 
 Dunn
 
 expectation-of-privacy factors. This was not an opening to invite the public into the area. Here, there was effectively a trespass onto the property.
 

 This case is also distinguishable from the “knock and talk” cases. Here, as in
 
 United States v. Quintana,
 
 594 F.Supp.2d 1294 (M.D.Fla.2009), this exception will not apply because Sergeant Falcon did not enter the property as a public person would have, through an opening created for that purpose. Nothing in this record would support a finding that the officers “approached the residence ‘just [as] any private citizen [could].’ ”
 
 Quintana,
 
 594 F.Supp.2d at 1302 (citing
 
 United States v. Taylor,
 
 458 F.3d 1201, 1204 (11th Cir.2006)). In
 
 Quintana,
 
 one law enforcement officer jumped a fence surrounding a home and unlocked the gate to allow other officers into the property. The district court found those “actions were beyond what would reasonably be expected of any private citizen such as a mail deliverer or salesperson. Any ‘knock and talk’ exception to the Fourth Amendment warrant requirement did not apply to the troopers’ initial entry onto the paved area near the residence.”
 
 Id. Compare State v. Triana,
 
 979 So,2d 1039 (Fla. 3d DCA 2008) (finding no constitutional infirmity in a seizure that followed a consensual encounter where the police spoke with defendant from outside of the defendant’s gate and the defendant agreed to the search and opened gate to allow police entrance);
 
 Ratcliff v. State,
 
 783 So.2d 1099 (Fla. 5th DCA 2001) (finding no constitutional infirmity in police accessing rear area of business that was open to the public and was not obstructed by any means). The entry in this case violated the defendant’s Fourth Amendment rights and any evidence seized after such entry must be suppressed.
 

 Validity of Subsequent Consent
 

 The defendant’s subsequent consent did not remedy the effect of the illegal entry. There was no break in the chain of events between the illegal entry
 
 *885
 
 and the procuring of the consent to the search. When a consent to search is obtained after illegal police activity, such as the illegal entry here, “the unlawful police action presumptively taints and renders involuntary any consent to search.”
 
 Gonzalez v. State,
 
 578 So.2d 729, 734 (Fla. 3d DCA 1991). The taint is only dissipated if “the state proves by clear and convincing evidence that there was a clear break in the chain of events sufficient to dissolve the taint.”
 
 Diaz v. State,
 
 34 So.3d 797, 804 (Fla. 4th DCA 2010) (citing
 
 Navamuel v. State,
 
 12 So.3d 1283, 1286 (Fla. 4th DCA 2009)).
 
 See State v. Sakezeles,
 
 778 So.2d 432, 434 (Fla. 3d DCA 2001) (finding that state bears the burden of showing that the taint is dissipated by subsequent events). Nothing in this record meets this burden.
 

 We reverse the order denying the defendant’s suppression motion. As the state properly agreed at the suppression hearing, that motion was dispositive of the case against the defendant. Therefore, this reversal requires that the trial court, on remand, dismiss the case.
 
 Gonzalez.
 

 Reversed and remanded with directions.
 

 [1]
 

 . The defendant testified that the property was posted with "no trespassing” signs, but the law enforcement witnesses testified that they saw no such signs. For purposes of our review here, we assume that the trial court found the police officers' testimony on this point more credible.
 

 [2]
 

 .
 
 Webster’s Third New Int'l Dictionary
 
 558 (1st ed. 1986).